In re Matter of BUMPASS.

No. 3701.

District Court, N. D. Texas.

July 2, 1938.

Frank Killough, of Houston, Tex., for review.

Renfro & Kilgore, of Dallas, Tex., and Bond & Porter, of Terrell, Tex., opposed.

ATWELL, District Judge.

Sometime prior to April 20th, 1936, the debtor filed his application under subsection (s) of section 75, 11 U.S.C.A. § 203(s), was adjudicated and the case referred to Conciliation Commissioner Barnes as Referee. Appraisers were appointed and the value of the lands was fixed in excess of $50,000.

A little more than two years after that, creditors, Bond and Allen, filed an application before the referee, asking the referee to again value the properties and consider the inability of the bankrupt to rehabilitate himself.

Between those dates, with the consent of this court, creditors Bond and Allen had proceeded in the state court to settle certain lien differences that existed between them and the bankrupt, on certain portions of the bankrupt's farm properties. That litigation was completed after having gone to the highest court of the state, and the rights of those two creditors, as well as the right of the bankrupt in those pieces of farm lands, were determined.

It is also made known to the court, and was made known to the referee after the rendition of the judgment, that the debtor was also liable to creditor Allen as endorser for one Brittain and Austin; that Brittain and Austin were also endorsers for the debtor. Manifestly, of course, the endorsers need not disgorge until their principal's assets shall have been exhausted.

With those conditions before the referee, he thought it wise to hear testimony along the lines suggested by these creditors, and did do so, and fixed the value of these particular properties upon which these creditors had liens at about $21,000, and he also found that the debtor could not rehabilitate himself, and that these creditors should be permitted to go forward with their foreclosures.

Three different criticisms of the findings of the referee are made: one is, that there was an illegal attempt to appraise; second, that foreclosure should not now be permitted, and third, a rather inconsequential one, which related to the verification of pleadings, which criticism has been abandoned here.

We find that subsection b of Section 70, 11 U.S.C.A. § 110(b), provides that, "All real and personal property belonging to bankrupt estates shall be appraised by three disinterested appraisers; they shall be appointed by, and report to, the court. Real and personal property shall, when practicable, be sold subject to the approval of the court; it shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value."

Thus, it appears under the body of the Act, which Act is the Act to which the Frazier-Lempke Act was added, and is now an integral part, the appraisal is often the key to the administration of asset cases.

The wishes of the creditors should be consulted as to appraisers. The appointment is evidenced by an order, and an oath of office must be taken.

The appraisal occupies even a higher position under subsection (s) of Section 75, 11 U.S.C.A. § 203(s). It provides that, "If a farmer does not succeed in effecting a composition or extension etc, he may ask to be adjudged a bankrupt. At the same time, or at the time of the first hearing, he may petition the court that all of his property shall be appraised, the exemptions set aside to him and that he be permitted to retain, under the supervision and control of the court, any part or all of the remainder of his property. Upon such a request being made, the referee shall designate and appoint appraisers as provided for in this Act (meaning the Bankruptcy Act, a portion of which I have already read). Such appraisers shall appraise all of the property wherever located, at its then fair and reasonable market value." That differs a little from the old Act, and the difference is significant. "The appraisal shall be made in all other respects with the rights of objections, exceptions and appeals in accordance with this Act, provided that in proceedings under this section either party may file objections, exceptions and take appeals within four months from the date that the referee approves the appraisal."

■ I think that section means what it says. After the expiration of the attack period it is a final judgment which may be overturned only as shown in subsection (3) of section (s), 11 U.S.C.A. § 203(s) (3), by the debtor, or, creditor, upon the happening of the event there outlined.

Subsection (1) under subsection (s), 11 U.S.C.A. § 203(s) (1), provides that, "after the value of the debtor's property shall have been fixed by the appraisal herein provided, the referee shall issue an order setting aside to such debtor his encumbered properties, and it is further ordered that his possession, under the supervision and control of the court, of any part or parcel, or all of the remainder of the debtor's property shall remain in the debtor, subject to existing liens" etc.

Subsection (2) under subsection (s), 11 U.S.C.A. § 203(s) (2), provides that, "When the conditions set forth in this section have been complied with, the court shall stay all judicial proceedings, in any court for a period of three years. During such three years, the debtor shall be permitted to retain possession of all or any part of his property, provided he pays a reasonable rental semi-annually for that part of the property of which he retains possession."

There are provisions as to the payments.

Subsection (3) of subsection (s), 11 U.S.C.A. § 203(s) (3), provides that "at the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession," I might interpolate right here, that a high appraisal is against the interest of the debtor, ordinarily, because that is the amount that the debtor must pay at the expiration of three years, "including the amount of encumbrances on his exemptions up to the amount of the appraisal, less the amount paid on principal: Provided, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a re-appraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor."

■ We cannot read this subsection in any way except as a procedure for the debtor. I think it also might be said it likewise protects the creditors, as intended by this particular statute-writer, and so far the courts have sustained it as now written.

The proviso that, "upon request in writing by any secured creditor or creditors, the court shall order the property upon which [they] have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold * * * by paying the amount for which [it] was sold, together with 5 percentum per annum interest," follows.

Then comes this provision, "If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and

order the property sold or otherwise disposed of as provided for in this Act [title]."

Three years is what Congress meant the debtor should have, and the court should see that the debtor does not fritter away property on which the creditors have a lien. It will keep its fingers upon the income and arrange for a proper rental. Out of the rental must come the taxes, of course.

This court, has, in cases where there was a manifest inability to farm the lands properly without any apparent ability to pay the rental and where the impossibility of rehabilitation was apparent, held it was inequitable to hold off the creditors the statutory time of three years.

But this bankrupt has a right to have his three years so long as the court finds, as it does, that he has paid his rentals, as well as, more on his debts than he was bounden to pay, and his security is in good condition and he has been looking after and farming it in splendid fashion.

The bankrupt has a tract of thirty-five acres in Marion County, another of one hundred sixty-seven one-half acres in Van Zandt, and another of three hundred sixty-seven acres in Kaufman. These tracts are outside of the two tracts upon which Bond and Allen hold their liens. Their liens are against a tract of four hundred forty-four acres, three one-half miles from Terrell, on a paved highway which has been considerably bettered during the bankruptcy proceedings, not only in the way of terracing and proper farming, but also by improvements to the main building and tenant houses. The other farm has one hundred twenty-nine acres and is in south Kaufman County.

It seems that there are liens against the three first mentioned tracts in favor of others than Bond and Allen.

The bankrupt also has a home in Terrell which is clear and exempt.

In addition to that, he has as not exempt, $2,946 in property made up of cash, stock and promissory notes.

In 1936 the farms upon which Bond and Allen have their liens, netted a little less than $1,400 in rentals, but the debtor made up the balance so the full $1,400 was paid. That was the situation also in 1937.

The taxes on the Bond and Allen liened farms are a little over $200.

You may draw an order reversing the referee on his right to appraise. Foreclosure is also denied.