## In re WHITWER.

### No. 975.

District Court, D. Nebraska, Norfolk Division.

April 20, 1942.

M. O. Cunningham and George B. Clark, both of Omaha, Neb., and William Lemke, of Fargo, N. D., for debtor.

Moyer & Moyer, of Madison, Neb., and William W. Graham, of Omaha, Neb., for moving creditor John W. Smith.

DELEHANT, District Judge.

In a proceeding under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, the debtor has filed a petition (with which he has deposited in this court the sum of four thousand dollars) praying for authority to redeem and take over, free and clear of encumbrances, a farm constituting a part of his assets, consisting of 114½ acres of land, at its alleged appraised value of four thousand dollars. John W. Smith, who holds, and at the time of the institution of this proceeding held, a mortgage on that land to secure a debt in the principal sum of five thousand dollars with interest accumulations now for something like five years, has filed his answer, objecting to the petition for redemption in which, among other things, he alleges that the land now has a value substantially in excess of four thousand dollars and requests a reappraisal of it under the provisions of Sec. 75, sub. s (3), at the same time denying that the original appraisal was ever judicially confirmed or became effective as an appraisal.

The issue thus presented was referred to Edward G. Garvey, esquire, supervising conciliation commissioner, who held a hearing upon it, and, on February 19, 1942, filed his written report recommending: (a) the denial of the debtor's petition to redeem and the allowance of the secured creditor's request for reappraisal; (b) the further reference of the file to Guy E. Thornton, local conciliation commissioner, with direction to cause a reappraisal, in connection with which the supervising conciliation commissioner recommends that each interested party appoint an appraiser with these two, or, in default of an agreement between them, the local conciliation commissioner, appointing the third; (c) that the appraisers' report be promptly filed with the conciliation commissioner and by him transmitted forthwith to the clerk of the court for the making up of issues before the court upon the confirmation or rejection of the reappraisal. The debtor has filed exceptions to the supervising conciliation commissioner's report, and the issues thus made have been adequately presented to the court upon oral argument and by written briefs.

While the interested parties do not agree upon the precise date when the stay period

in this case under section 75, sub. s, expired or will expire, and that issue has not been determined by the court and is not now under examination, it is conceded that the debtor's deposit and petition to redeem, and also the secured creditor's answer with demand for reappraisal were all made and filed before the expiration of the stay period.

The question is, therefore, presented whether, in the light of the history of the appraisal made in this proceeding (vide infra), an absolute right, and basis, of redemption were fixed for the benefit of the debtor; and placed beyond the power of the court, upon the request of a secured creditor holding a specific lien upon the property involved, to order a reappraisal of the property with the consequence that a new redemption basis would be created, under Sec. 75, sub. s (3).

First, both in point of time and by way of foundation for the court's consideration of the issues, has an initial appraisal been had and completed in this case? The debtor insists that it has been; the creditor denies it. The record upon this point should be examined briefly.

The original proceeding was filed March 15, 1939. Failing to accomplish composition or extension, the debtor, on July 18, 1939, filed his amended petition under Sec. 75, sub. s, and the order of adjudication and reference was filed on August 15, 1939. These items and many others, not presently involved, were filed in the office of the Clerk of this Court. In the meantime, another file in the case was accumulating in the office of Royal V. Sheets, then the local conciliation commissioner, no part of which was filed with the clerk until January 30, 1942, when, upon the presentation of a question respecting its contents, it was all filed as a single item. From the several units in that filing the following steps incident to appraisal appear, the dates assigned being the dates on which the conciliation commissioner entered the respective filings in his files:

August 23, 1939, conciliation commissioner gave notice of meeting to be held September 11, 1939, at which three disinterested persons would be selected as appraisers.

September 11, 1939, debtor filed petition for appointment of appraisers, the making of appraisement and the granting of a three-year stay of proceedings. Conciliation commissioner appointed Elmer G. Ra-

kow, Fred Penn and Fred Spencer as appraisers. September 22, 1939, the designated appraisers subscribed and filed their oath, and made and filed their appraisal in which the land now involved is valued at four thousand dollars. October 13, 1939, debtor filed application for exemptions. No objections to the appraisal were ever filed; and no formal order was ever made either by the judge or by the conciliation commissioner approving and confirming it or setting it aside. Nor was any order made setting aside exemptions or allowing, in a single order, a stay of three years within the literal contemplation of Sec. 75, sub. s.

From the filings made directly in this court it further appears, however, that, on October 30, 1939, one of the judges of this court entered an order disallowing a petition of the secured creditor, Smith, then pending before the court for the dismissal of the land in question from the operation of the proceedings, and granting a stay of all judicial proceedings for one year, or until October 30, 1940, and prescribing certain rentals for the land. Then, on May 9, 1941, the judge of this court made a further order prescribing a rental structure and staying all judicial proceedings "for such additional period of one year from March 1, 1941, to February 28, 1942."

On November 4, 1941, the debtor filed an unentitled pleading in which he recited the granting of the two previous stay orders, the last of which expired February 28, 1942, and requested the allowance of "another stay of one year as provided by law and also continued possession of the premises described in his schedules." Order to show cause thereunder was issued; objections to further stay were filed by the secured creditor, Smith, who also prayed for liquidation upon the grounds that the permissible stay had elapsed and that the debtor had committed waste and was in default of payment of rent. The issues thus presented have never been tried or determined and are not now before the court. Their solution was evidently intercepted by the debtor's practical assertion of his claimed right to redeem.

Touching the procedure to procure the initial appraisal of the property of a debtor in a proceeding under Sec. 75, subsection s, after providing for the filing of the debtor's amended petition, upon the happening of certain enumerated events, contains this

language: "Such farmer may, at the same time, or at the time of the first hearing, petition the court that all of his property, wherever located, whether pledged, encumbered, or unencumbered, be appraised, and that his unencumbered exemptions, and unencumbered interest or equity in his exemptions, as prescribed by State law, be set aside to him, and that he be allowed to retain possession, under the supervision and control of the court, of any part or parcel or all of the remainder of his property, including his encumbered exemptions, under the terms and conditions set forth in this section. Upon such a request being made, the referee, under the jurisdiction of the court, shall designate and appoint appraisers, as provided for in this act [title]. Such appraisers shall appraise all of the property of the debtor, wherever located, at its then fair and reasonable market value. The appraisals shall be made in all other respects with rights of objections, exceptions, and appeals, in accordance with this act [title]: Provided, That in proceedings under this section, either party may file objections, exceptions, and take appeals within four months from the date that the referee approves the appraisal."

Sec. 75, sub. s (1), then provides for the setting aside to the debtor of his unencumbered exemptions and his unencumbered interest or equity in his exemptions, and the securing to the debtor of the possession of his other property: "after the value of the debtor's property shall have been fixed by the appraisal herein provided."

Only after the completion of these manifestly preliminary steps, is it contemplated by Sec. 75, sub. s (2), that the court shall enter the stay order.

█ Section 75, sub. s, with due allowance for its palpable incoherence, does not seem necessarily to contemplate the approval by the referee (conciliation commissioner) of the appraisal in every case. The court is unable to say that such approval is a jurisdictional prerequisite to the validity or finality of the appraisal. There is no express mandate for approval in the amendatory "section". Nor is such a mandate to be found in "the act" (meaning the Bankruptcy Act). In re Bumpass, D.C., 23 F.Supp. 876; Federal Land Bank of Berkeley v. Nalder, 10 Cir., 116 F.2d 1004. The provisions for appraisal in general bankruptcy proceedings are to be found in Sec. 70, sub. f of the act, Tit.

11, § 110, sub. f, U.S.C.A. They require that the appraisers (or appraiser for there may now be only one) "appraise all the items of real and personal property belonging to the bankrupt estate and * * * prepare and file with the court their report thereof," but do not seem to require confirmation. (See, upon confirmation in general bankruptcy proceedings, Remington on Bankruptcy, 3d Ed., §§ 2523–2530, both inclusive.)

It is true that by the proviso with which Sec. 75, sub. s, is concluded it is declared that in proceedings under Sec. 75 either party may file objections, exceptions and take appeals "within four months from the date that the referee approves the appraisal."

With some justification counsel for the secured creditor argue that the emphasized phrase betrays a legislative purpose to require an approval by the referee (conciliation commissioner). The court concedes that a requirement for formal approval of the appraisal may ultimately be intruded into the act through judicial construction. But the court does not consider that the congress has required such approval. In Re Bumpass, supra [23 F. Supp. 878], the court referring to Section 75, sub. s, says: "I think that section means what it says. After the expiration of the attack period it is a final judgment which may be overturned only as shown in subsection (3) of section (s), 11 U.S.C.A., § 203, (s) (3), by the debtor, or, creditor, upon the happening of the event there outlined."

█ To this court, is seems probable that the language of sec. 75, sub. s, with reference to approval of the appraisal by the referee is merely a recognition of the fact that in an instance where an appraisal is made the object of attack there will actually be an order upon it by the referee, and a prescription of a period thereafter in which his action may be reviewed. Whatever may be its construction it is patently confusing and incomplete. But it is hardly the mission of the court either to clarify its hopeless confusion or to supply its palpable omissions. The court holds only that the language in question is not sufficient to constitute a mandate for a referee's approval of every appraisal; and that the appraisal made in this case on September 22, 1939, is a valid and complete appraisal.

The court suggests, without deciding, that an element of approval of the appraisal may necessarily be involved in the orders of the judge of this court granting stays, under which rents have been collected. For though no single stay for three years has been allowed, the law does not contemplate that any stay whatever may be granted until after the making of an appraisal. Sec. 75, sub. s (1); John Hancock 'Mutual Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176; Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222; Wright v. Union Central Life Insurance Co., 311 U.S. 273, 61 S.Ct. 196, 198, 85 L.Ed. 184.

█ May it not be pertinently suggested that if the appraisal here under examination is incomplete or insufficient, the aggrieved creditor's presently available relief is a direct attack upon it, either by objection to its approval or by motion or petition for its vacation. It would appear that an application by a creditor for reappraisal inferentially, at least, presumes the previous making of an essentially valid initial appraisal on the request of the debtor. Under sec. 75, sub. s, which alone provides for the initial appraisal it is clearly contemplated that an appraisal will occur only upon the debtor's request. The creditor's initiation of a valuation procedure is provided for only in Sec. 75, sub. s (3); and it is in the nature of a reappraisal, which, both in time and in logic, follows some earlier appraisal; and that former valuation, whatever may be its infirmities, must be something more than a nullity.

Having concluded that the appraisal of the 114½ acre tract at the valuation of four thousand dollars is a valid initial appraisal, should the court proceed further and declare that that appraisal fixes an option value at which the debtor may, at his election, redeem the parcel in question and take it free of liens or encumbrances? The answer requires the examination of a part of Sec. 75, sub. s (3): "(3) At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: Provided, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor."

Then follows the further proviso in which the machinery for sale at the behest of a secured creditor is erected.

Counsel for the debtor, including one of the authors of the act under which we are proceeding, have presented to the court vigorous argument, both oral and written, in support of their position. Their chief reliance appears to be upon the case of Wright v. Union Central Life Insurance Co., supra. That case, they argue, subordinated, to the paramount right of redemption by the debtor, at a price based upon an appraisal (in the cited case upon a reappraisal requested by the debtor), the right of a secured creditor to the sale of his security subject to limited further redemption rights based upon the sale price. Whereupon, they insist that, by its logic, in striking down the second proviso in Sec. 75, sub. s (3), it must be held also to have subordinated the creditors' right under the first proviso to reappraisal, to the allegedly paramount redemption rights of the debtor under the initial appraisal. They insist that the two provisos must stand or fall together.

The writer of this opinion is not persuaded by that reasoning. By its own language, the effect of Wright v. Union Central Life Insurance Co. is limited to "the narrow issue * * * whether under § 75, sub. s (3), the debtor must be accorded an opportunity on his request, to redeem the property at the reappraised value or at a value fixed by the court before the court may order a public sale."

In the body of the opinion, its writer thus states the mission of Sec. 75 as a whole: "This act provided a procedure to effectuate a broad program of rehabilitation of distressed farmers faced with the disaster of forced sales and an oppressive burden of debt. * * * *Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to*

*the extent of the value of the property.* * * * There is no constitutional claim of the creditor to more than that. And so long as that right is protected the creditor certainly is in no position to insist that doubts or ambiguities in the Act be resolved in its favor or against the debtor." (Emphasis added).

There was in the Wright case a controversy between the redemption rights of a debtor after he had had recourse to the first proviso of Sec. 75, sub. s (3), and the sale rights of a secured creditor under the second proviso of the section. No issue was there involved, either openly or implicitly, as between an initial appraisal and a resort to the first proviso.

The argument that the Wright case inferentially postpones the creditor's right to reappraisal, to the debtor's elective right of redemption under the initial appraisal, neglects both the essential thought of the Wright opinion and the real purpose of both appraisal and reappraisal.

The reasoning of the Wright opinion is founded upon the premise that, in our current jurisprudence, "there is no constitutional claim of the [secured] creditor to more than" "the value of the property" pledged as his security. That is the heart of the opinion; and its conclusion is that the allowance to the secured creditor of a paramount right of sale, at his election, with a consequent new and limited option right at a price measured by the sale, would confer upon the creditor a right beyond the limits of that constitutional claim. Its emphasis is upon "the value of the property". It grants that the secured creditor is entitled to security to the extent of that value. But it does not define "the value of the property" or strive to limit the device by which it shall be measured. See, also, In re Roney, 7 Cir., 119 F.2d 989.

Now, appraisal and reappraisal, alike and equally, have to do with "the value of the property". Its ascertainment and nothing else is their objective. Presumably they are effective to determine that value, as of their respective dates. Therefore, both appraisal and reappraisal are devised to enable the court and the interested parties to determine "the value of the property" with relation to the security of the secured creditor and the debtor's right of redemption. The public sale contemplated in the second proviso of Sec. 75, sub. s (3), is not determinative of value and does

not assume to be. It has no logical parity with either an initial appraisal or a reappraisal, but is rather an ultimate resort, when the debtor has failed to avail himself of his redemption rights under either an appraisal or a reappraisal.

Debtors having recourse to the protection of Sec. 75 almost daily remind the courts of the tragedies they have sustained in consequence of the acknowledged abrupt decline of real estate values. Their plight prompted the amendment; and undoubtedly has weighed heavily in the sometimes discordant judicial reflections sustaining and applying the legislation. Values did decline; they might decline still further; and they might conceivably ascend. All these facts and possibilities the congress apprehended. And it provided for them.

Let it be remarked that the debtor's right of redemption arising after the initial appraisal is not a momentary, but rather a continuing, right. Except in certain contingencies, now quite radically curtailed (Wright v. Union Central Life Insurance Co.), it may endure for three years, and for at least an appreciable additional period thereafter. Congress realized that, and it realized, too, that within that three years and more "the value of the property" might decline to the point where its redemption at the initial appraisal price would be oppressive upon the debtor, or rise to the point where the arbitrary employment of the initial appraisal price, without regard either to appreciation in value or the amount of the secured debt, would be unconscionably inequitable to the secured creditor. Therefore, preserving at all times the debtor's redemption rights at "the value of the property", the congress maintained an essential justice in their assertion by providing in the same phrase of the amendment, for the debtor in the event of further decline in prices, and for the creditor in the event of their appreciation, a right of reappraisal upon request. Thereby the congress sought to assure an equitable "value of the property" as the optional redemption price, determining the value as of the date of the redemption or in relative proximity thereto.

In the process of the redemption of his encumbered land by a debtor under Sec. 75, sub. s (3), there is, as against the secured creditor, a very real taking of his property. He loses his security, and in its stead receives, against his will, or at

472

least without the necessity of his consent, money in an amount commensurate with the "value of the property" which is now said to be the limit of his constitutional interest in it. But, so far as the writer of this memorandum is aware, reimbursement to an owner for property taken from him through legal machinery is consistently made upon the basis of its value at the time of the taking. So there is nothing novel or unique about the erection of a device for valuation that allows a flexibility of operation, with due recognition of the indefinite duration of the option right and the uncertainty of the time of its exercise.

Any other legislative policy would have savored of rank oppression and led to intolerable results. Upon the oral argument of this issue, it was seriously urged by one of the debtor's attorneys that, in the instant case, the debtor's alleged optional right to redeem at a price of four thousand dollars must be affirmed and reappraisal denied even though it were to be conceded that a marked appreciation in values has ensued since the appraisal; and indeed even though, in the meantime, by reason of oil development, the property should presently have an actual "fair and reasonable market value" of four hundred thousand dollars. The maintenance of this extreme thesis must obviously defeat the premises on which it rests. With that argument, Whitwer is not now before the court seeking protection; he is demanding an unwarranted and unconscionable advantage. He is invoking the jurisdiction of this court not as a shield, but rather as a scourge. The allowance of his petition under the guise and in the name of the merciful protection of the unfortunate would achieve the perversion of the very purposes of the amendment.

Naturally, direct authority upon the immediate issue is not abundant. The question does seem to have been met and decided directly in a case cited by counsel for the secured creditor, which has been reported during the preparation of this memorandum. In re Wright, 7 Cir., 126 F.2d 92, 94. It is a further phase of Wright v. Union Central Life Insurance Co., supra. Upon the return of the mandate in that case to the district court, the creditor presented to it a request for reappraisal. The debtor objected; but the district court, over objections, took testimony respecting value and made a current reappraisal of $10,832, as against a previous reappraisal of $6,000, which was the figure discussed in the opinion of the Supreme Court. The debtor then urged, first, that in no event was the creditor entitled to a reappraisal, as against his right of redemption under the previous reappraisal; and, secondly, that in the case there under review the opinion of the Supreme Court, conclusively and for every purpose, even against a demand for reappraisal, adjudicated the debtor's right to redeem for $6,000. Upon the trial court's adverse ruling he took the case to the Circuit Court, preserving both issues.

The second point is not presently material, but it may be noted that the Circuit Court held that the issue upon it, then before the Circuit Court, was not before the Supreme Court on the previous appeal, and was, therefore, not adjudicated for any purpose. The ruling seems obviously reasonable.

■ Upon the first point, which is the one now being considered, the Circuit Court said:

"Our conclusion as to the first query is that neither party is bound by the first appraisement. The court, in the interest of justice, can, and should, make a reappraisement, if the facts warrant it. No express statutory authorization for a reappraisement would be necessary. It is inherent in equity principles. Moreover, we think the statute authorizes reappraisals.

"On behalf of a debtor, it is easy to conceive of instances where buildings were burned, or damages from lightning, floods, or other causes have materially lessened the value of the premises. Fairness to the debtor would require a reduction in the redemption price, that is in a reappraisement.

"On the other hand, if the circumstances show an increase in the value of land during the years which the debtor is in possession, fairness to the creditor also requires a reappraisement.

"It is likewise easy to conceive of a case in this circuit where, during that three year period, oil might be discovered underlying the surface of the land possessed by the debtor. To permit debtor to remain in possession for three years (in this case eight years) without the payment of taxes or any sum for the use of the premises, would be highly inequitable and unfair to the creditor—unless a reappraisement were had.

"A fair construction of the statute would seem to permit of a change in appraisal, if the facts warrant or require it. And this is so regardless of who is helped or hurt by the reappraisement."

The opinion is directly in point and its conclusion seems to the writer of this memorandum to be correct.

■ The court, therefore, concludes that the debtor's petition to redeem should be denied, and the request of the secured creditor, Smith, for reappraisal should be allowed; and that the recommendations of the supervising conciliation commissioner in that behalf should be confirmed.

■ But the court can not concur in the supervising conciliation commissioner's recommendation of the technique of appointing appraisers. Under Sec. 75, sub. s, the referee (conciliation commissioner) "shall designate and appoint appraisers, as provided for in this act [title]," i. e., the general bankruptcy act, Federal Land Bank of Berkeley v. Nalder, supra. By the provisions of "the act" with its amendments to date the appraisers (or appraiser) shall be appointed by the court (which may include the referee) and are responsible to it in the first instance. Sec. 70, sub. f, Tit. 11, § 110, sub. f, U.S.C.A. True, commentaries on the law of bankruptcy indicate that in the general field of the act, creditors may properly be heard to recommend appraisers for appointment. But it would seem that this conclusion ought to be limited to the jurisdiction out of which the textual comment arises, where it is in the common interest of bankrupt and creditor to fix a reasonably high minimum sale price. Here that community of interest is patently absent; and the debtor and the secured creditor have mutually irreconcilable positions. It would seem, therefore, that the local conciliation commissioner should appoint as appraisers, three strictly disinterested and uninfluenced persons, preferably without the suggestion of any party to this proceeding. The order of the court will simply direct the local conciliation commissioner to appoint the appraisers upon his own responsibility and to cause them to proceed with the reappraisal as provided by Sec. 75, sub. s (3). See, also, Sec. 75, sub. s; and Sec. 70, sub. f, Tit. 11, § 110, sub. f, U.S.C.A.

In this connection, the court is also of the opinion that the more orderly course would allow the local conciliation commissioner, if either party objects to the reappraisal, to rule upon it and the objections, unless he prefer to refer it, on his own motion and responsibility, to the court for initial ruling. Thus, ordinarily the court would expect to rule upon the reappraisal only through the instrumentality of exceptions to the conciliation commissioner's order thereon.

An order will be entered accordingly; and it will overrule the recommendations of the supervising conciliation commissioner respecting the manner of selecting the appraisers and the method of formulating issues on the reappraisal, if any there be.

Let counsel for the secured creditor prepare an order in harmony with this memorandum and submit it to counsel for the debtor for approval; and if there be disagreement respecting its form, then, upon notice, to the court for settlement.