### PAUL v. WATERS.

Civ. No. 3204.

United States District Court
E. D. Oklahoma.

Dec. 9, 1952.

Hulsey & Hulsey, McAlester, Okl., for Jess D. Paul.

Sam Lattimore, Asst. Atty. Gen. of Oklahoma, for Jerome J. Waters.

WALLACE, District Judge.

The petitioner, Jess D. Paul, seeks by writ of habeas corpus [1] to be released from the State Penitentiary at McAlester, where he is serving a life sentence for murder, being sentenced July 28, 1926, upon a plea of guilty.[2]

The petitioner was denied a similar writ by the Criminal Court of Appeals of Oklahoma in January of 1951.[3] In that petition he alleged that the prosecuting authorities, knowing him to be innocent, inveigled him to enter a plea of guilty, all of which was in violation of due process of law guaranteed by the State [4] and Federal Constitutions.[5]

The petition before this court contains the same general allegations.

This court issued a writ and at the hearing [6] the petitioner testified that just prior to being sentenced in 1926 he was warned by the sheriff [7] to plead guilty or he would doubtless get the "chair" because of his previous criminal record,[8] and was admonished by the sheriff to not accept an attorney if offered one by the court. He further testi-

---

1. 62 Stat. 964, as amended May 24, 1949, 63 Stat. 105, 28 U.S.C.A. § 2241 et seq.

2. Sentenced by J. B. Charlton [now deceased] Washington County District Judge, State of Oklahoma.

3. Ex parte Paul, 1951, Okl.Cr.App., 227 P.2d 422, certiorari denied Paul v. Burford, 341 U.S. 922, 71 S.Ct. 738, 95 L. Ed. 1355.

4. Art. II, §§ 7, 20.

5. U.S.C.A.Const. Amend. 14, § 1.

6. In the United States Courthouse, McAlester, Oklahoma, May 2, 1952.

7. John Creed [now deceased] Sheriff of Washington County.

8. Served 7–10 years in Arkansas State Penitentiary for burglary and robbery, and was released in 1923; entered Oklahoma State Penitentiary November 4, 1925, to serve 15 years on a conviction of conjoint robbery. See Ex parte Paul, footnote 3, supra.

fied he was not given a copy of the information, and was not even offered an attorney. He asserted that the entire proceeding, including sentencing, was summary to the extreme, taking in all only a few minutes.

The only other witness appearing for the petitioner at the hearing was W. T. Benson who was a Sergeant at Granite Reformatory at the time this sentencing took place, and who had custody of the petitioner during the entire proceeding in question.[9] Mr. Benson testified that he did not feel the petitioner got justice, and was of the opinion that the sheriff and county attorney used too much persuasion, but he had no detailed recollection.

Both witnesses conceded that in view of the many years which have elapsed they could not remember what actually took place. Mr. Benson could not and would not testify that he recalled any specific irregularity in the proceeding and would not say of a certainty that the petitioner had been denied any right to which he was entitled in a criminal case of this character.

■ There must be a certain presumption of regularity which can be overcome only by competent evidence.[10] Here, even the

9. Petitioner was at Granite Reformatory, Granite, Oklahoma, serving time for conjoint robbery (footnote 8, supra). When petitioner was taken to Washington County on murder charge, witness accompanied him.

10. This court on its own initiative reviewed the docket at the Washington County Courthouse. It disclosed that the following was filed on July 28, 1926: "Transcript from W. L. Woodroof, Justice of the Peace; Information verified, filed and recorded; Defendant Jess D. Paul present in person; Defendant arraigned and information read; Defendant waives time to plea and enters plea of guilty; Defendant waives time for sentence and asks that sentence be pronounced against him at this time; Defendant sentenced to serve a term of life imprisonment in State Penitentiary; Judgment and sentence filed and recorded; Commitment issued."

This court also obtained the following in affidavit form:

"I, C. E. Bailey, being first duly sworn on oath depose and state: That I was the duly elected, qualified, and acting County Attorney of Washington County, Oklahoma, on the 28th day of July, 1926, and as such County Attorney I represented the State of Oklahoma in Criminal Case No. 1536 entitled State of Oklahoma, Plaintiff, v. Jess D. Paul, Defendant. Some twenty-five years have passed since this matter was handled and in the very nature of things my memory is not at all accurate on the happenings of that case. However, I recall that this defendant, prior to his arraignment and plea of guilty in the District Court of Washington County, Oklahoma, had been incarcerated in some other penitentiary and while in the penitentiary he had made an admission that he participated in the killing of a night watchman at Dewey, Oklahoma, some few years before July 28, 1926 and was released to the authorities of Washington County for the purpose of a trial in the murder case then pending in Washington County. As I recall, several parties, including the defendant, Jess D. Paul, were burglarizing a store in the City of Dewey, Washington County, Oklahoma, late at night and the night watchman interrupted them and the watchman was immediately killed and the robbers fled. It occurs to me that after the defendant, Jess D. Paul, was returned to Washington County, he was brought down to my office from the jail and made a full and complete statement of the robbery and the killing of the night watchman and didn't spare himself whatsoever in his statement. It seems to me that this statement was taken down by a reporter and later transcribed and read by the defendant and signed by him. This statement is evidently on file in the records of the County Attorney of Washing County, Oklahoma. [Note: This statement could not now be found in the County Attorney's office nor in the files of the State Crime Bureau.] Not remembering, of course, the details of the preliminaries leading up to the making of these statements, I am unable to recite the conversation had between myself, the officers and the defendant, but I do know, however, that it was my custom and habit to always apprise the defendant of his right to counsel and that his statements must be free and voluntary. After this statement was taken, as I recall, the defendant waived preliminary hearing and entered a plea very shortly thereafter in the District Court of guilty and was sentenced to life imprisonment in the State Penitentiary. J. B. Charlton, who is now deceased, was the District Judge who sentenced the defendant. I have no independent rec-

petitioner himself concedes that the details of what actually took place are not clear in his mind.

The court believes it would have been justified in refusing to grant the writ in view of the prior findings by the Criminal Court of Appeals of Oklahoma,[11] coupled with the fact that the petitioner waited some 25 years before raising this question.[12]

However, a writ was issued and a hearing conducted so that the testimony of the officer in charge of the petitioner at the time of judgment and sentence could be given.

■■ It is the judgment of the court that the evidence produced at the hearing is wholly insufficient to establish that petitioner was denied due process of law.[13] Release is denied.

ollection whether the Judge asked the defendant if he desired counsel in this particular case, but I do know, however, that it was the custom and practice of the Judge to make such inquiry, especially in a capital case, and I am sure that he did so in this instance. Further the affiant sayeth not." (Original Affidavit given in August, 1952.)

11. In Gault v. Burford, 10 Cir., 1949, 173 F.2d 813, 814, Judge Murrah said: "The Oklahoma court of last resort having fully considered and adjudicated petitioners' contentions with respect to due process of law, in accordance with humane concepts of a fair hearing, and the Supreme Court of the United States having refused to intercede, the trial court might have with judicial propriety declined to issue the writ, out of a rightful respect which the Federal courts owe and accord state judicial processes. [Citing cases.] * * * Although the factual adjudications in the Oklahoma appellate court are not strictly res judicata [citing cases] they are entitled to great weight and credence in determining whether, in the last analysis, the petitioners had been accorded due process in the state courts. [Citing cases.] Any other procedure would require the Federal courts to retry every criminal case in the state courts, where due process is challenged. Our duty to safeguard the supremacy of the constitutional command does not go that far." Certiorari denied Gault v. State of Okl. ex rel. Cobb, 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991.

See Smith v. Olson, D.C.Neb.1942, 44 F.Supp. 456, at page 458 the court said: "In its ruling upon the petition presently before it, the court, fully mindful of the limitation upon the principle of res adjudicata that is implicit in Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Johnson v.

Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; and Smith v. O'Grady, supra. [312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859], might nevertheless confidently rely upon that principle. In Smith v. O'Grady, supra, every issue here presented was raised, and along with sundry additional issue of fact, was resolved adversely to the petitioner. The petitioner has had his constitutional 'day in court' upon every question he now suggests. And this court will not relitigate his claim."

12. Ex parte Workman, 89 Okl.Cr. 289, 207 P.2d 361, at page 363 the court said: " * * * Moreover, approximately eight years have elapsed since the petitioner committed the crime and was convicted thereof, and for the first time he presents an application for a writ of habeas corpus in this court. This court has repeatedly held that the right to relief by habeas corpus may be lost by laches, when the petition for habeas corpus is delayed for a period of time so long that the minds of the trial judge and court attendants become clouded by time and uncertain as to what happened, or due to dislocation of witnesses, the grim hand of death and the loss of records, the rights sought to be asserted have become mere matters of speculation, based upon faulty recollection, or figments of imagination, if not outright falsifications. * * * ". Accord, Ex parte Owens, 88 Okl.Cr. 346, 203 P.2d 447; Ex parte Cole, 89 Okl.Cr. 360, 208 P.2d 193; Ex parte Motley, 86 Okl.Cr. 401, 193 P.2d 613.

13. The writ and release should be denied where the evidence is weak or unsubstantial. Merideth v. Amrine, 155 Kan. 7, 122 P.2d 759, certiorari denied 316 U.S. 670, 62 S.Ct. 1047, 86 L.Ed. 1745, rehearing denied 316 U.S. 711, 62 S.Ct. 1275, 86 L.Ed. 1777.