## Ex parte HALL.

No. A-11317.   Feb. 23, 1950.

(215 P. 2d 587.)

David W. Taylor, Norman, for petitioner.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for respondent.

BRETT, J. · This is an original proceeding in habeas corpus brought by the petitioner Bill Hall. He alleges that he is unlawfully imprisoned at McAlester, Okla., in the State Penitentiary by C. P. Burford, warden thereof. The cause of his restraint he alleges to be a void judgment and sentence rendered out of the district court of Creek county, Okla., on August 14, 1940, issued by the judge thereof, the late C. O. Beavers. In said judgment it appears he entered a plea of guilty to the crime of robbery with firearms and was sentenced to a term of

25 years in the State Penitentiary. It is admitted by his counsel in the proceeding in this court that the crime was committed while petitioner was an escapee from the penitentiary at McAlester. It further appears in said petition that the judgment and sentence was the result of his participation in an armed robbery on August 5, 1940, in Creek county, Okla. The crime in which he participated was an armed robbery committed on August 5, 1940, in Creek county, Okla., against Bessie Moore, in which there was stolen from her $54 in money and a .38-40 caliber Colts pistol. On August 9, 1940, in effecting his arrest, he alleges the officers inflicted on him multiple gunshot wounds consisting of wounds in the chest, back, right thigh, right arm, side of the face and left chest. It is admitted in the record that these wounds were received while the petitioner and his accomplice Joe Lovelace and a girl associate were attempting to run a road block. In this attempt the girl was killed. It further appears after his arrest he was taken to the hospital in Stillwater, Okla., in what he alleges was thought to be a dying condition. He says he remained there until the afternoon of August 13, 1940, when he was removed by ambulance to Sapulpa, Okla. He alleges his removal was effected under an agreement with the sheriff that he would be hospitalized upon his arrival in Sapulpa, but instead he was placed in the county jail contrary to the agreement and in spite of repeated requests for hospitalization. He says that he remained in jail unattended except by a female prisoner in the jail. He alleges the next day, on August 14, 1940, he was brought to the district courtroom where he was arraigned before Justice of the Peace H. R. Croston, without the aid of counsel, and before whom he entered a plea of guilty. He alleges that he was immediately bound over to the district court (thus making it appear he was denied his right of 24 hours in which

to plead, Title 22 O.S.A. 1941 § 491), and that Judge C. O. Beavers, district judge, immediately proceeded with the arraignment on the charge as laid in the information. He further alleges that he was in such weakened condition that he had to have a hypodermic of morphine in order to participate in the proceedings, and his voice was so weak his answers had to be relayed by the county attorney to the judge (making it appear in his petition that he was without the aid of counsel at the time of his arraignment in the district court contrary to the Constitution, art. II, § 20, Bills of Right). Immediately after he entered his plea of guilty he says the court sentenced him to the penitentiary for life (thus making it appear that he was denied his statutory right to 48 hours for the imposition of sentence). Whereupon he was placed in an ambulance and taken to the penitentiary. He further alleges that he arrived at McAlester in such a weakened condition that he had to have blood transfusions to save his life.

Attached to the petition and offered as evidence in support thereof was a letter from the Stillwater hospital substantiating the injuries but denying any knowledge of the alleged agreement with the sheriff of Creek county that he was to be hospitalized upon his arrival in Sapulpa. Also attached to the petition is a physical examination chart in relation to his condition on August 9, 1940, when he was admitted into the Stillwater hospital showing him to have been wounded as hereinbefore set forth. Also attached to the petition is the affidavit of E. R. Jackson to the effect that upon petitioner's arrival at the penitentiary in McAlester on August 15, 1940, he, Jackson, was called upon to give a blood transfusion and that he observed the petitioner and believed him to be in a dying condition. Such likewise appears in the affidavit of Pat Casey and in addition thereto, that it was necessary

to give the petitioner two blood transfusions before an operation to drain the lung tissue, which was twice performed, and two blood transfusions thereafter to save petitioner's life. The affidavit of Joe Lovelace was also attached to the petition and offered in evidence. It was to the effect that Bill Hall was brought into the courtroom on a stretcher, that the petitioner was informed of the nature of the crime of which he was charged, that the information was read to him and the petitioner Hall was asked if he wanted to enter a plea to the charge. Lovelace says that Hall could not respond to the questions of the court (making it further appear that he was without the aid of counsel), whereupon he alleges a doctor gave the said Hall a shot of morphine, after which the state's attorney leaned over and informed the court petitioner Hall wished to plead guilty (making it further appear that Hall was without the aid of counsel). Lovelace alleges that Hall waived the right to the aid of counsel and by implication says that he did not have an attorney appointed to defend him. He says finally, thereupon the court pronounced judgment and sentence upon Hall. He further alleges that he was in the jail on the night before Hall was sentenced, and that Hall had no medical attention. He further says he heard the sheriff tell petitioner Hall "the only medical treatment you will get is in the penitentiary at McAlester, and that if he did not enter a plea of guilty without a lawyer he (the said Hall) could stay in the county jail and die so far as he was concerned." The affidavit of Jack Leaser attached to the petition and offered in evidence was to the effect that he saw Hall when he was brought to the penitentiary, that he was in a most serious condition, and he gave him a blood transfusion. There was also offered in evidence his progress record bearing date of August 13, 1940, from the Stillwater hospital which says "Patient is

better; some fever. Still has rales in chest and is expectorating blood. To leave via ambulance under guard. Dr. Fry".

Predicated upon the foregoing, petitioner's contention herein is that under the proceedings hereinbefore outlined he was denied the aid of counsel at all stages of the proceedings, that his physical condition was such that it was impossible for him to know the gravity of the proceedings, and that he was denied due process of law as guaranteed by the Constitution.

To the petition of Bill Hall the state made response in the form of a demurrer and contended that there are no jurisdictional questions raised in the petition, followed with a general denial except as to all matters admitted as true. In support of its case the state filed a supplemental response setting up the petitioner's criminal record to show that the petitioner was not ignorant nor inexperienced in courtroom proceedings, but to the contrary was competent to know the consequences of his plea of guilty. In this supplemental response it appears that the petitioner's criminal record began in 1933 at the age of 18 years when he was convicted of drunken driving in Pottawatomie county and sentenced to a term of one year in the penitentiary. Thereafter, it further appears in 1934 he was convicted in Pottawatomie county at the age of 20 of the crime of robbery with firearms and sentenced to a term of 5 years in the penitentiary. It appears that while serving the latter sentence he escaped from the penitentiary at McAlester, and as an escapee he became involved in the robbery with firearms in Creek county, Okla., for which the sentence herein complained of was imposed. Thus it appears that twice before the defendant had had courtroom experience, that he had one prior conviction for robbery with firearms, and was, there-

fore, not ignorant of courtroom proceedings, and of his right to aid of counsel, etc. Hence, in support of the foregoing response the state introduced in evidence the verified transcript of the proceedings had in the justice of the peace court:

"Record of Proceedings

"Aug. 14, 1940, Complaint received and filed charging Bill Hall and Joe Lovelance Carl Dickerson and Fletcher Evans with Robbery with Firearms. Four warrants issued and given sheriff for service.

"Aug. 14, 1940. Bill, Joe Lovelance, and Fletcher Evans appear in person for arraignment on complaint charging them with Robbery with Firearms. Complaint read in open court and defendants notified of their constitutional rights to have attorneys present at all hearing and that they have the right [to] a preliminary hearing. Bill Hall states true name as Bill Hall. Bill Hall in person enters plea of guilty to complaint and waives preliminary hearing, and is bound over to District Court for trial on complaint charging Robbery with firearms. Held without bail. Commitment issued.

"Joe Lovelance states true name as Joe Lovelace. Joe Lovelace in person enters plea of guilty to complaint and waives preliminary hearing and is bound over to the District Court for trial on complaint charging Robbery with firearms. Commitment issued. Held without bail. Severance granted as to Fletcher Evans. * * *"

The state also offered in evidence the minutes of the district court made at the time the plea of guilty was entered herein upon which the judgment and sentence herein complained of was based. The district court minutes of the proceeding, omitting caption, reads as follows, to wit:

"The above defendants, Bill Hall and Joe Lovelace, appearing for arraignment on this 14th day of August, 1940, and *it appearing that Bill Hall appeared to be in-*

*jured from gun shot wounds, and that he was brought into the Court room on a stretcher at his own request for arraignment and plea,* and the Court appointed Tom Wallace as his attorney to confer with him and advise him of his Constitutional rights, and the Court also feeling it necessary to inquire into his mental condition appointed Margaret Jennings as Court Reporter to take his statement, and the Court proceedings had."

From the court minutes it thus appears that the petitioner was arraigned at his own request. The state further introduced in evidence the record of the proceedings had in the district court of Creek county, Okla., upon arraignment of the petitioner and his codefendant Joe Lovelace. We deem it important that it be quoted substantially as taken therein. It appears, omitting caption, as follows, to wit:

"Testimony Taken upon Arraignment of Bill Hall and Joe Loveless.

"Now, on this 14th day of August, 1940, Bill Hall and Joe Loveless, both being present in the District Court Room, at Sapulpa, Oklahoma, the following proceedings were had:

"Appearances:

"Everett S. Collins, County Attorney

"Kenneth Hughes, Deputy County Attorney—for the State of Oklahoma

"Tom Wallace—for the Defendants

"The Court: The Court is going to appoint Tom Wallace as attorney to advise with and represent Bill Hall at this hearing for the reason that he is afflicted at the present time, and I understand he is charged with a serious offense, and so is this defendant standing here. He is charged with a similar offense. Have you talked with an Attorney? Joe Loveless: Yes, sir. The Court: Have you had his advice? Joe Loveless: No, no legal

advice. The Court: Do you want legal advice. The court wants to tell you that you have a right to counsel. The Court: Do you want a lawyer to represent you, or haven't you made up your mind whether you want a lawyer—what you want to do—you don't want any attorney? Mr. Loveless: No. The Court: All right. Mr. Wallace: If your Honor please, if you will pardon me—to represent this man here—before we enter in this case—I will use my own discretion as to what action will be taken, subject to the wishes of my client, but I would like to talk to him. The Court: I think you ought to have that opportunity. Mr. Wallace: I will just talk to him out here, if it's all right. The Court: Roll him out there, Sheriff. (After Mr. Wallace and Bill Hall conferred, out of the presence of the Court, the following proceedings were had:) County Attorney: (Reading) Information. * * * (substance omitted) The Court: You have heard the reading of that information charging you with the crime? Bill Hall: I have. The Court: Are you now ready to enter your plea? Bill Hall: Yes, sir. The Court: Are you ready? Bill Hall: Yes, sir. The Court: Guilty or not guilty? Bill Hall: Guilty. Joe Lovelace: Guilty. (Joe Lovelace had previously asked that he be allow to make arrangements with Tom Wallace to represent him, and Mr. Wallace entered his appearance as attorney for Joe Lovelace.) The Court: Let the record show that these defendants were in open Court represented by counsel, after conferences with their counsel. The Information was read. Each of them plead guilty to the Charge. Now, I would like to have you to submit some of the facts in connection with this matter so that the Court will have an idea of the extent of their guilt. County Attorney: What facts do you desire, Your Honor? Do you want something about the commission of the crime? The Court: I first want some facts with reference to the defendant here—his mental and physical condition at this time. Dr. B. C. Schwab, a witness on behalf of the State was duly sworn to tell the truth, the whole truth and nothing but the truth, testified as follows: Direct Examination by County Attorney: Q. State your name to the Court, doctor. A. Dr. B. C. Schwab.

Q. You are a licensed and practicing physician? A. Yes, sir. Mr. Wallace: We admit Dr. Schwab's qualifications. Q. Have you had an occasion two or three days to wait on one Bill Hall in the county jail, Sapulpa, Oklahoma? A. Yes, sir. Q. Have you been his attending physician for that time? A. Yesterday evening and this morning I attended him. Q. Are you acquainted with his physical condition and the mental condition he is in at the present time? A. Yes, sir. Q. State to the court what that is? A. He is mentally sane. He has a little fever from his injury, but he is normal to know what he is doing. Bill Hall: That's right. Q. (by county attorney) In your opinion, doctor, do you believe that since the time you have been attending Bill Hall in the county jail at Sapulpa, Oklahoma, that his actions are his own voluntary actions? A. I do. Q. And during this time done with his own accord? A. Yes, sir. County Attorney: Does the court wish to ask any questions? The Court: Mr. Wallace? By Mr. Wallace: Q. Doctor, you never saw this man of your knowledge prior to this time? A. No, sir. Q. Prior to the time you was called upon to attend him yesterday? A. No, sir. Q. How much conversation have you had with him? A. Oh, just with reference to his condition concerning his wounds is all. Q. You looked at his wounds? A. Yes, sir. Q. Treated them? A. Yes, sir. Q. What are the extent of his wounds? A. Oh, he has two shoulder wounds in the back of the left leg between the knee and hip—in the lower third—about lower third and middle—he has one wound where a ball went through from the left hip—left chest. He has another wound in the back from the right side—seems that ball is in about the fifth—about the first or second lumbar vertebrae—then he suffered a wound where he was just touched with a ball—pistol ball here on this shoulder (indicating). Then he has another wound in the right bicep and another one in the elbow that has fractured his arm. Then he has a mess of bird shot up in the left shoulder. I think that's about all of them. I might have missed a few. Q. When did he say he received his wounds? A. Oh, possibly a few days ago —he didn't say—I would say possibly a few days ago. I

couldn't tell you exactly.  Q. Is he suffering severe shock from those gun shot wounds?  A. Yes, sir.  Q. Have you taken his fever today?  A. No, I didn't take his temperature.  Q. What would it run?  A. Right about a hundred.  Q. In other words, just a few degrees?  A. Just from the wounds and shot is all.  Q. Would you say that from your examination of him that from all the wounds you described and the fever resulting therefrom that you think he is capable of, at this time, of acting on anything grave concerning himself, in a mental way, I mean?  A. Yes, sir.  Q. In other words, you think he had full alertness of his mental capacities?  A. Yes, sir, he don't have enough fever to render him unconscious to where he wouldn't know what he is doing.  Q. From your talk with him would you say that he is a fairly intelligent man?  A. Yes, sir, he is absolutely alert and knows what is going on.  Q. He is, in your opinion, alert?  A. Absolutely.  Q. He is not under the influence of any opiate? or anything of that character that would impair him to any degree?  A. No, sir.  Q. As a general thing men who are suffering from gun shot wounds they are often given shots.  Q. He has had a shot since he has been in the room.  People have the wrong idea about morphine.  It doesn't depress them it hoots them up like a shot of liquor.  Q. Makes them alert?  A. Yes, brightens up their ideas—that's the reason that they like it.  Q. Is he an addict?  A. No, sir, I don't think so.  He doesn't show much evidence of that.  Mr. Wallace: I believe that's all.  County Attorney: That's all.  The Court: Witness excused.  The Court: Now, you boys have just entered your pleas of guilty here to the charge of high jacking with firearms, and under the law you will be entitled to wait 24 or 48 hours before sentence is passed upon you—you have a right to waive that at this time and let the court pass judgment on you.  You have a right to demand that time and wait 48 hours before sentence is passed on you.  Bill Hall: I would rather waive it and be sentenced now.  I would like to be sentenced now.  I would like to waive it.  The Court: Do you request the court to proceed now to pass judgment upon your plea of guilty?  Bill Hall: Yes, sir.  The

Court: (to Joe Lovelace) How about you? Joe Lovelace: Yes. The Court: His name is what? Joe Lovelace: Joe Lovelace. The Court: And it is your desire too to be sentenced now? Joe Lovelace: Yes, sir. The Court: And you both waive that time and request the court to now pass judgment upon you, is that right? Joe Lovelace: Yes, sir. Bill Hall: Yes, sir. The Court: Mr. Hall, you know perfectly well what you are doing here, do you? Bill Hall: Yes, sir. The Court: And you want to plead guilty to this charge and take your sentence, is that right? Bill Hall: Yes, sir. The Court: All right, let the record show that these things have been asked—that it is the judgment of the court that you, and each of you, be confined to the State Penitentiary for the balance of your life at McAlester. The time to commence on this charge when you are received there by the warden of the penitentiary."

Such is the record before us on the petition for a writ of habeas corpus.

The sole questions before us in this proceeding are: (1) Was the proceeding conducted at the request of the petitioner or was his plea the result of coercion? (2) Was the petitioner represented by counsel at the time of the proceeding herein complained of? (3) Was he in such mental condition as to realize the gravity of the situation and the consequences of his plea? (4) Was his plea voluntary and intelligently made? (5) Is relief by habeas corpus open to him after nine years delay?

We have held many times that it is fundamental that where a petition for writ of habeas corpus is filed, the burden is upon the petitioner to sustain the allegations thereof, and every presumption favors regularity of the proceedings had in the trial court. The general rule often announced by this court is that error must affirmatively appear from the record; it is never presumed. Ex parte Matthews, 85 Okla. Cr. 173, 186 P. 2d 840; Ex parte Cart-

wright, 88 Okla. Cr. 206, 201 P. 2d 935. It is made to appear from the affidavit of Joe Lovelace that the arraignment of Bill Hall was the result of coercion. This contention is refuted by the court minutes to the effect that his arraignment was at the request of the petitioner Hall. It thus affirmatively appears from the record contrary to the affidavit of Lovelace that the speedy arraignment of Hall was upon Hall's request. In this connection we have often held that where a disputed question arises as to what occurred upon arraignment of one accused of a crime, great weight will be given to the recitation in the minutes of the court proceedings as to what occurred. Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139; Ex parte Matthews, supra; Ex parte Cartwright, supra. It is well here that we say, that proceedings of such gravity should not be conducted with undue haste, as though the accused was being given the rush act. Neither should they be unduly delayed. The court minutes show nothing contrary to the defendant's request for a speedy arraignment which alone is the saving grace of this proceeding. We cannot presume that they speak an untruth, in the absence of clear and convincing proof to the contrary. Even in the face of the court minutes we cannot restrain the feeling of the court that the better practice in such cases would be to have taken the petitioner to the penitentiary hospital, awaited his recovery, returned him to Sapulpa, and then proceeded with the arraignment. Certainly the haste here employed could not be justified on the ground of fear of the defendant's escape. He was in no condition to do so. This proceeding is and can be sustained solely on the ground of what appears to be a valid and truthful court minute made at the time of the proceeding, which is sought to be contradicted nine years later by the faulty recollection in an accomplice's affidavit as revealed in his ac-

complice's affidavit which discloses he did not even recollect the appointment of counsel for the petitioner. In the face of the foregoing record we can only conclude in the absence of clear and conclusive proof to the contrary that the arraignment was conducted at the request of the petitioner and that his plea was not the result of coercion on the part of the sheriff. Moreover it supports the proposition that the defendant by his conduct waived his right to 24 hours in which to plead, which under the law he could, and did do. Ex parte Gilbert, 71 Okla. Cr. 268, 111 P. 205; Norman v. State, 81 Okla. Cr. 78, 160 P. 2d 751.

As to the petitioner's contention that he was denied the aid of counsel, the record discloses that at the preliminary arraignment he did not have counsel but was advised in that proceeding of his constitutional right thereto, that he did not demand aid of counsel, and a plea of guilty was voluntarily entered. It was the petitioner's right under the law to waive his right to aid of counsel. Baker v. State, 9 Okla. Cr. 62, 130 P. 820. The right to waive the preliminary hearing was exercised under art. 2, § 17 of the Bill of Rights, permitting the right to waive a preliminary hearing. Moreover, in such a case where defendant is arraigned on an information or indictment and pleads guilty to the merits he waives the right to thereafter question any irregularity in the preliminary hearing if one was held. Ex parte Cartwright, supra. The petitioner's contention that the court lacked jurisdiction for failure to provide counsel for him at the preliminary hearing is therefore without merit. The record conclusively shows that at the arraignment in the district court, the petitioner was represented by counsel, Tom Wallace, an able and experienced lawyer in the field of criminal law. This fact is contrary to the affidavit of Joe Love-

lace the petitioner's codefendant. Under the record, the petitioner's contention that he was not represented by counsel at all stages of the proceedings is therefore without merit. In fact, the trial court cautiously guarded the rights of the petitioner in this regard as conclusively appears from the record.

The next question is, Was the petitioner in such mental condition as to be able to appreciate the gravity of the situation and the consequences of his plea? The only competent evidence in this regard is that of Dr. B. C. Schwab who attended petitioner while he was in the Creek county jail. His evidence given at the arraignment is to the effect that he, Dr. Schwab, was acquainted with Hall's physical condition and mental condition at the time of the arraignment. He testified Hall was able to fully appreciate what he was doing. To this Hall, himself, the record shows, apparently voluntarily interjected "that is right"; that Hall's plea of guilty was of his own accord, and that the shot of morphine was not such as would impair him to any degree. The petitioner himself does not deny the facts of the record showing he knew what he was doing. The doctor's testimony, and the petitioner's actions as revealed from the record, show that the petitioner was in such a mental state as to appreciate the gravity of the situation and the consequences of his plea. In a case where the plea is mental incapacity on the part of the accused to understand and know of the charges and appreciate the effect of the plea of guilty, in a habeas corpus action, the burden is on the petitioner. He must show mental incapacity to understand and know the nature of the charges pending against him, and that he did not appreciate the effect of the plea of guilty thereto. When the petitioner fails to sustain the burden under such

plea, habeas corpus will be denied. Ex parte Bostwick, 90 Okla. Cr. 133, 211 P. 2d 290.

Next, was his plea of guilty voluntarily entered. Nothing appears in the record to the contrary except the affidavit of Joe Lovelace, the petitioner's codefendant, already shown to be predicated upon faulty recollection. As we said in Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 141:

"Under bill of rights, Sec. 20, Okla. St. Ann. Const., an accused has the right to consult with counsel and to be fully advised as to his rights, and as to the consequences of his act before entering his plea to the indictment or information.

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea. * * *

"A person prosecuted for a crime may waive the rights guaranteed to him by bill of rights, relating to trial by jury, right to be heard by counsel, etc. * * *

"Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

See, also, Ex parte Cobb, 89 Okla. Cr. 82, 205 P. 2d 518. The petitioner has not sustained the burden of establishing that his plea of guilty was not voluntarily entered. As we said in the Meadows case, supra, each case must stand on its particular facts including the background, experience and conduct of the accused. Based on this premise we can only conclude that the plea of guilty was not only voluntarily but intelligently made. In light of the petitioner's knowledge and experience as to arraign-

ment, apparently the petitioner thought so, for if he had not he would not have refrained from questioning the proceedings for nine years. Proceedings for habeas corpus under the conditions herewith presented should be timely pursued. As was said in Ex parte Matthews, supra [85. Okla. Cr. 173, 186 P. 2d 841]:

"The right to relief by habeas corpus may be lost by laches, when the petition for habeas corpus is delayed for a period of time so long that the minds of the trial judge and court attendants become clouded by time and uncertain as to what happened, or due to dislocation of witnesses, the grim hand of death and the loss of records, the rights sought to be asserted have become mere matters of speculation, based upon faulty recollection, or figments of imagination, if not out-right falsifications."

See, also, Ex parte Motley, 86 Okla. Cr. 401, 193 P. 2d 613; Ex parte Cole, 89 Okla. Cr. 380, 208 P. 2d 193, and numerous other cases. Even now, since this proceeding was instituted, Judge C. O. Beavers, who presided over the arraignment herein involved, is now deceased. No doubt others in the prosecution, such as material witnesses, may have passed on. In any event, as revealed by the faulty recollection of Joe Lovelace as to the facts of the arraignment, the recollection of witnesses as to the facts of the case on its merits would be most unreliable. It appears from the record that the court used more than ordinary caution in protecting the petitioner's rights. The trial judge did not stop in his exercise of caution with the appointment of counsel to represent the accused and the taking of medical testimony to determine his mental capacity to intelligently plead to the information, but after the plea was accepted he advised the petitioner and his codefendant of their statutory right to 48 hours before pronouncement of judgment and sentence. This the

record shows the petitioner and his codefendant both waived, and requested immediate pronouncement of sentence. Under the record herewith presented, it is apparent that the court had jurisdiction of the subject matter, jurisdiction of the person, and authority under the law to pronounce the judgment and sentence rendered. We have repeatedly held that in habeas corpus the inquiry is limited to these questions. Ex parte Brown, 90 Okla. Cr. 129, 211 P. 2d 293; Ex parte Merton, 89 Okla. Cr. 76, 205 P. 2d 340; Ex parte Story, 88 Okla. Cr. 358, 203 P. 2d 474; Ex parte Cartwright, supra; Ex parte Matthews, supra; Ex parte Vanderburg, 73 Okla. Cr. 21, 117 P. 2d 550; Ex parte Massengale, 67 Okla. Cr. 181, 93 P. 2d 41, and numerous other cases to the same effect. It therefore appears that the court was not without jurisdiction to pronounce the judgment and sentence herein rendered. For all of the above and foregoing reasons, the writ of habeas corpus is accordingly denied.

JONES, P. J., and POWELL, J., concur.