### DUNLAP v. STATE.

#### No. A–11984.

Criminal Court of Appeals of Oklahoma.

June 16, 1954.

470

---

Van Cleave & Thomas, Charles C. Lieb-ler, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error, Zahnie Z. Dunlap, hereinafter referred to as defendant, was charged in the municipal criminal court of the City of Tulsa with driving a motor ve-hicle upon a public highway while under the influence of intoxicating liquor. He waived trial by jury and was tried before the court, who found him guilty as charged and assessed punishment at a fine of $100 and costs.

For reversal it is asserted that the court erred in not granting a further continu-ance, and that the evidence was insuffi-cient to support the judgment.

The evidence introduced in the case is set out in the record in narrative form and stipulated to as correct between the attorneys for defendant and for the City. It is recited in the record:

"That prior to the beginning of the trial the court overruled a motion of the defendant for a continuance, for the reason that this case had been con-tinued several times and that it had been set down for trial for a sufficient length of time for the defendant to have his witnesses present, to which ruling of the court the defendant ex-cepted."

The record does not contain a formal motion for a continuance. There is no ev-idence that any attempt was made to com-ply with the statutory requirements in ap-plication for a continuance. Tit. 12 O.S. 1951 §§ 668, 667.

It was stipulated that an affidavit by an absent witness for the defendant, Dr. W. G. Choate, concerning the defendant, might be admitted in evidence and considered by the court.

We find no basis in the record to support the contention of error on the part of the court in refusing to grant a further continuance after the case was finally set for trial.

We shall set out a portion of the evidence of witnesses as stipulated between counsel for the defendant and the City, as follows:

"Mr. Hillis Francis Bell, Jr., testi-fied that he is a resident of the city of Tulsa, Oklahoma; that he works for a radio station in the city of Tulsa, Oklahoma; that on the 15th day of September, 1953, the said witness was driving north on Denver Street at Archer Street in the city of Tulsa; that the defendant was driving east on Archer, and that said defendant ran the stop sign located on the west side of the intersection at Archer and Denver, and that the said defendant:

collided with witness's car; that the defendant's car proceeded east, and on Archer Street between Boulder and Cheyenne Streets, which was a distance of a block or block and a half, the defendant stopped his car; whereupon two men jumped out on the right side of defendant's car and ran up over the viaduct on Boulder Street; that Mr. Bell followed this defendant to the point where he stopped, got out of his car, went around to defendant's car on the driver's side, and talked to the defendant who was still sitting under the wheel of the vehicle; that he testified that the defendant seemed to be in a stupor; that his speech was very thick and slurred; that he admitted to Ed Erwin, the officer, he had had two or three beers back on Archer a ways; the witness Bell testified that someone called the officers and Officer Ed Erwin arrived at the scene shortly thereafter; that the defendant asked the officer if the officer knew who he, the defendant, was, and the officer stated that he did know who the defendant was, that he was Chief of the Park Police of the City of Tulsa, and that his conduct in public cast reflections on the whole Police Department; that the defendant tried to get the officer to let the defendant go, but the officer refused. The witness further testified that from his observation of the defendant he was of the opinion the defendant was drunk. This witness also testified that there was a strong odor of some sort of alcoholic beverage on the defendant's breath.

"Mr. Loal Wilson testified that he was riding a bicycle west on Archer Street; that he was approximately a block from Denver when he saw the defendant's car strike the other vehicle driven by Mr. Hillis Bell, and then proceed on between Boulder and Cheyenne and there stop; that two men jumped out on the right side of defendant's vehicle and ran up over the viaduct on Boulder Street; that he crossed over to the car and was pres-

ent when officer Ed Erwin questioned the defendant and the defendant admitted to Officer Erwin that he had two or three beers on Archer Street; both Hillis Bell and this witness testified that Mr. Dunlap, the defendant, could hardly walk and the officer had to practically carry him to the squad car, and that from his observation of the defendant, the defendant was drunk."

Officer William Craig observed the defendant at the police station, and thought him drunk.

It was further stipulated:

"Officer Ed Erwin testified that he is an officer of the Police Department of the city of Tulsa; that he received a call to Archer and Boulder to investigate an accident; that upon his arrival he found the defendant's car with the defendant sitting under the wheel, parked between Boulder and Cheyenne Streets, and in his conversation with the defendant, the defendant tried to get him to let him go, but that he refused. Officer Erwin also testified he had known the defendant for from five to ten years; that he knew that the defendant had a leg or back injury and that affected his walking to some extent, but on this date the defendant could hardly walk at all.

"Officer Erwin further testified that the defendant had a strong odor of alcoholic beverage on his breath, and that in his opinion the defendant was drunk.

"On cross-examination by the defendant's attorney, Officer Erwin admitted the defendant could have been under the influence of some sedative, that he supposed it was possible, he didn't know."

In behalf of the defendant, Dr. W. G. Choate by affidavit stated:

"I leave my office at 12 a. m., daily and do not return unless something special calls me back.

"On Monday, September 15, 1952, around 3 P. M., Mr. Z. Z. Dunlap called me and asked me if I would

come back to the office and give him something to ease the severe pain in his legs. I met him at my office about 3:45 P. M., and I gave him two capsules of Sodium Phenobarbital. We visited several minutes and I gave him a few of the capsules to take home and instructed him to take them should the pain reoccur.

"I have treated Mr. Dunlap several times for this condition and I told him to return home immediately as this medicine would make him woozy and sleepy. He said he had several places to go, but I told him to forget about making the calls and go home and he said he would.

"As you notice when he walks he has spinal trouble and has difficulty walking straight and he could not possibly walk a straight line. And there is no doubt but what the medicine I gave him caused the condition he was in."

It was further stipulated:

"On the part of the defendant, the defendant Z. Z. Dunlap testified that he was suffering from his leg injury on the date in question, and that he had visited his doctor, Dr. Choate, who had given him some kind of a sedative to ease his pain, and that he had taken some of this medicine a short time prior to his accident at Denver and Archer Streets, Tulsa, Oklahoma; that he had not *drank* any beer on this day, and that he had not *drank* any beer for two or three years, but that said drowsiness and unsteadiness on his part was caused by the sedatives which he had just taken.

"On cross-examination the defendant was asked who the two men were that got out of his car when he stopped after the accident, and he stated that he did not know who they were; that he had picked them up at Newblock Park; that he had felt dizzy or sick while out there at the park and had asked one of these men to drive him home; that he did not remember whether the man drove the car or not;

that he did not remember running a stop sign and that he did not remember driving the car. Later in cross-examination he mentioned details of the collision. He further testified that he knew when he took this medicine that Dr. Choate gave him on previous occasions that it made him sick and dizzy.

"Mr. O. A. Zeigler, Tulsa City Park Superintendent, testified on behalf of the defendant. He testified that he had been in his employ for approximately eleven years; that he knew the defendant and was associated with him every day, and in close contact with him, and that to his knowledge the defendant never drank intoxicating liquors. He further testified that during their Christmas party when they had some intoxicating liquors, that he never saw the defendant take a drink.

"On further cross-examination, Mr. Zeigler admitted that Mr. Dunlap was only in his office a short time each day, and that he did not know what the defendant did the rest of the day, and that he did not visit the defendant socially, that his only contact with the defendant was when the defendant came to the office, usually for a short time on each afternoon; that he did not know whether the defendant had anything to drink on the date in question.

"On re-direct examination he testified that he knew the defendant had suffered some injury, the extent of which he did not know, which injury often caused the defendant to be unsteady upon his feet."

█ Of course defendant had the right under Section 20, Art. 7 of the State Constitution to waive the right to trial by jury and be tried by the court. And we have held that the findings of fact by the judge will have the same force and effect as a verdict by the jury. State v. Schave, 72 Okl.Cr. 75, 113 P.2d 203; Ex parte Hall, 91 Okl.Cr. 11, 215 P.2d 587; Eakin v. State, Okl.Cr., 260, P.2d 730.

As said in Sanders **v.** State, Okl. Cr., 266 P.2d 491, 492:

"Where a jury is waived, and cause is tried to the court, a judgment of conviction by the trial court will be sustained on appeal if there is competent evidence in the record to sustain the judgment."

The judgment is affirmed.

JONES and BRETT, JJ., concur.