## Ex parte JOHN OWENS.

No. A-11087.    Feb. 9, 1949.

(203 P. 2d 447.)

Joe W. Simpson, of Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for respondent.

BAREFOOT, J. Petitioner, John Owens, an inmate of the State Penitentiary at McAlester, serving a term of life imprisonment by reason of his plea of guilty to a charge of murder committed in Pittsburg county, on March 14, 1936, has filed his petition in this court for writ of habeas corpus, seeking his release.

An opinion was filed in this matter on January 5, 1949, and an order entered on January 10, 1949, withdrawing the original opinion. The reason for entering the order was that a deposition taken by petitioner had been filed in the office of the clerk of this court and the same had not been considered by the court prior to en-

tering the original opinion. The deposition has been fully considered, and this opinion is substituted for the one filed on January 5, 1949.

Petitioner's contention is that at the time of entering a plea of guilty he was not appointed counsel, and not informed of his rights under the Constitution, and was, therefore, deprived of his constitutional rights. Attached to his petition is a copy of the complaint filed before a justice of the peace of Pittsburg county, a copy of the transcript of docket entries in the office of the court clerk of Pittsburg county, copy of the information, the clerk's minutes at the time of entering his plea of guilty, and a copy of the judgment and sentence.

The Attorney General, on behalf of the warden of the penitentiary, the respondent, has filed a response to the rule to show cause, and states the cause of petitioner's confinement is by reason of the facts above stated, and asks strict proof of the allegations in the petition, and further states: "that the petition filed herein does not show jurisdictional matters sufficient for the discharge of said petitioner." Attached to the response is an affidavit of the district judge of Pittsburg county who sentenced petitioner, and a written statement of petitioner made to the county attorney of Pittsburg county in the presence of the sheriff and two deputy sheriffs, after he was arrested upon the charge of the murder of William Larry in Pittsburg county. In this statement, petitioner gives a full and complete statement of the killing of the said William Larry, and states that he killed him by hitting him in the head with a large rock and shoving his body into a lake where he drowned. It is unnecessary to go into details as to the facts surrounding the killing.

In the deposition of defendant, taken at McAlester on October 11, 1948, he testifies that while he was confined in the county jail at McAlester, the sheriff, H. H. Sherill, and one of his deputies, E. M. Phillipi, on the night previous to his being taken before the justice of the peace for preliminary hearing on April 19, 1938, took petitioner to the basement of the county jail and that Sheriff Sherrill hit him with a club while Deputy Phillipi held a gun on him. That after midnight he was taken by these officers to the office of the court clerk, and in the presence of the county attorney he made the written statement confessing his guilt of the murder of William Larry on March 14, 1938, by killing him and throwing his body in the lake. That the statement was made by reason of fear and because of the injuries inflicted upon him by the sheriff and deputy. He further testifies that he was not advised of his right to counsel at the time of his preliminary, nor at the time of entering his plea of guilty, and that only the Judge, a lady clerk, the sheriff and undersheriff and two other defendants who were pleading guilty were present at the time he was sentenced; that the county attorney was not present. He stated on direct examination that his head had a patch on it where he was hit by the sheriff when he went before the district judge the morning after he was struck by the sheriff; and when asked if he told the judge about it, he answered: "Well, I didn't say tell him every bit of that—I told him about when they was carrying me through the degree." He stated that the judge's only reply was, "In a case of that kind, only thing I can do is give you a life sentence in this case."

On cross-examination he admitted that he read the written confession and signed it; that he was 39 years

of age, and could read and write; that he had been convicted and served three terms in the penitentiary prior to this sentence of life imprisonment, two terms in Texas for grand larceny and burglary, and one from Stephens county, Oklahoma, for ten years for manslaughter. He admitted that he was familiar with court procedure, and knew that he had the right to have an attorney and the right to a trial by jury. He was asked if he told the judge, the county attorney, or anyone in authority that he had been hit prior to his pleading guilty, and he replied: "No, sir, I didn't tell nobody." He testified that he had not told anyone he was forced to make a confession until he told his present lawyer at the penitentiary just prior to the filing of the present petition. He now says that this statement was false, and that he did not kill the said William Larry, and did not throw his body in the lake.

We have recently had before this court four cases which are somewhat similar to the facts in the present case. They are, Ex parte Snow, 84 Okla. Cr. 423, 183 P. 2d 588; Ex parte Matthews, 85 Okla. Cr. 173, 186 P. 2d 840; Ex parte Motley, 86 Okla. Cr. 401, 193 P. 2d 613; Ex parte Cornell, 87 Okla. Cr. 2, 193 P. 2d 904.

In the first three of these cases the writ of habeas corpus was denied. In the Cornell case the writ was granted. These cases fully discuss the questions of law involved in this case, and it is therefore unnecessary to unduly lengthen this opinion by quoting from them. Some of the principles discussed and conclusions drawn therefrom are:

First: The writ of habeas corpus may not be used as a substitute for an appeal.

Second: Petitioner for writ of habeas corpus has the burden of sustaining the allegations of his petition.

Third: Public policy does not permit petitioner on habeas corpus to supply missing links by his testimony standing alone in record, but relief must be based upon something more substantive, and petitioner's testimony should be corroborated by clear and convincing proof.

Fourth: Recitation in minutes of court proceedings as to what occurred on arraignment, or at the time plea of guilty was entered by one accused of crime are entitled to great weight.

Fifth: The right to habeas corpus may be lost by laches where petition therefor is delayed for so long a period of time that proceedings at trial resulting in conviction have become uncertain, speculative and clouded by time.

Sixth: The above paragraph (fifth) has special application where many of the witnesses have died, or it is impossible to secure their evidence at a late date.

Applying the above principles of law to the facts in the instant case, we find that a plea of guilty was entered by petitioner. No appeal was taken, and there is no record of the facts of the killing of deceased by petitioner except as set out in the statement made by him.

We next find that the evidence given by the petitioner in his deposition is not corroborated by other convincing evidence, but is contradictory within itself, and in direct conflict with the minutes of the court clerk, a copy of which is attached to his petition. It is there stated:

"Tuesday, April 19, 1938.

"State of Oklahoma vs. John Owens.

"Defendant brought before Court for arraignment and after having information read to him and being informed of all his rights in the premises, defendant elects to plead without an attorney & enters his plea of guilty to the Charge of Murder and waives time of Sentence and is by the Court sentenced to life imprisonment in State Penitentiary."

In the judgment and sentence it is recited:

"The defendant John Owens being personally present in open court and having been legally informed against and having pleaded guilty to the charge of Murder committed in said Pittsburg County, State of Oklahoma; and upon being asked by the Court whether he had any legal cause to show why judgment and sentence should not be pronounced against him, and giving no good reason why judgment and sentence should not be pronounced against him, and none appearing to the Court.

"It is therefore hereby ordered, adjudged and decreed by the Court that the said defendant John Owens be committed to be imprisoned in the State Penitentiary at McAlester, in the State of Oklahoma, and confined in said Penitentiary for the term of Life for said crime by him committed, said term of imprisonment to be at and from the date of his incarceration."

It may be stated that this judgment and sentence is upon a general printed form furnished to the court clerk by the State Examiner and Inspector, and often the minutes of all that transpired at the time of entering judgment and sentence is not shown by the record.

It is also noted that the testimony of petitioner is in direct conflict with the facts set forth in the affidavit of Judge Higgins, who was the trial judge at the time petitioner was sentenced. The affidavit of Judge Higgins is as follows (omitting the caption):

"R. W. Higgins states upon oath that he was the District Judge of the Fifteenth Judicial District, Pittsburg County, and on April 19, 1938, pronounced judgment and sentence upon the defendant, John Owens, charged with the murder of William Larry, in case No. 4015, State of Oklahoma vs. John Owens; that affiant has no individual recollection of the particular case but inasmuch as the clerk's minutes show that the defendant was informed of all his legal rights at the time of arraignment, and at the time of pronouncing judgment and sentence upon his plea of guilty, affiant is reasonably certain that the defendant was fully advised of all his legal and constitutional rights at the time of entering said plea of guilty; that is, he was advised of his right to trial by jury, and of the right to be heard and represented by counsel, and was advised that if he were not financially able to employ an attorney to represent him that it would be the duty of the court to appoint an attorney, and was otherwise advised of his constitutional rights.

"Affiant further says that it was invariably his practice to fully advise all persons pleading guilty to criminal charges pending in his court, and most especially when pleading guilty to a charge of murder, to take particular pains to fully advise the accused of his constitutional rights as guaranteed by the Bill of Rights of the State Constitution, Article 2, Section 20, and, therefore, affiant feels reasonably sure that he did not fail to fully advise said defendant as to his legal and constitutional rights as the time of entering his plea of guilty to said charge of murder.

"(Signed)   R. W. Higgins.

"'Subscribed and sworn to before me this 25th day of October, 1948.

"(Seal)                    (Signed)   Effa Alexander,
                                       Notary Public.
"My commission expires October 28, 1948."

In view of the record in this case, petitioner's evidence is far from being clear and convincing. There are discrepancies in his testimony as to the time he claims that he was taken to the basement of the jail and struck over the head with a club by the sheriff. He testifies that it was the night before he was taken before the justice of the peace for his preliminary. The statement made by petitioner was sworn to before the court clerk on April 13, 1938. The complaint was filed before the justice of the peace on April 15, 1938, and defendant was taken before the justice of the peace on the same day, and his preliminary set for April 19, 1938. He entered a plea of guilty and was sentenced on April 19, 1938, yet petitioner in his deposition states that he entered his plea of guilty and was sentenced on the morning after he was hit by the sheriff, and that he had a "patch" on his head where he had been struck by the sheriff. It does not stand to reason that a district judge of the character and legal attainments of Judge Higgins would have permitted a defendant to plead guilty who had open evidence that he had been hit by an officer at the time of sentence. And it is most certain he would not have done so if had been told that an officer had struck him.

The record in this case discloses that this crime was committed on March 14, 1938. Defendant entered the penitentiary to begin the serving of his sentence on April 19, 1938, having been sentenced from the same county in which the penitentiary is located. The petition in this case was filed on June 21, 1948. A space of ten years had elapsed before petitioner made any statement to anyone that he had in any way been mistreated by any officer prior to his entering a plea of guilty. In the petition he states that his wife had been placed in

jail and that it was fear that she would be punished that caused him to confess. Yet, in his deposition he admits that his wife had been discharged from jail prior to the time he made the written statement, and that he had no fear of her being punished. The record further discloses that Sheriff H. H. Sherrill, and Deputy Phillipi have both died, and that the county attorney is not physically able to testify, and, therefore, their evidence as to what transpired cannot be obtained. It may be noted that petitioner in his deposition stated that no one was present at the time he was struck except those who are now dead, and there is no one to contradict his statement. Judge Higgins has died since this case was filed in this court and his evidence would now be unobtainable.

The cases above cited state the law applicable to the facts in this case. The facts here presented do not bring petitioner within the rule laid down in the Cornell case, supra. In that case the defendant was only sixteen years of age (seventeen when sentenced), had never before been in a courtroom. Here petitioner was 39 years of age, had previously been convicted and served three different sentences in the penitentiary and was fully familiar with the procedure followed in criminal cases. The record in the Cornell case also revealed other facts which justified the granting of the writ. There had been no untimely delay in that case.

We reiterate that trial courts should be very careful in permitting pleas of guilty to be entered without the appointment of an attorney to counsel and represent a defendant, and especially in cases where defendants are given, or may be given, the death penalty, or sentenced to life imprisonment. A full and complete record should also be made when a plea of guilty is entered,

so that in future years it may be used as evidence and proof of what transpired at the time of entering the plea. Too often in later years questions are raised and those who were officers at the time are not available, or the length of time has clouded their memories as to what did transpire at the time. This case clearly exemplifies that statement.

From the record here presented, petitioner was not deprived of any of his constitutional or statutory rights, and the petition for writ of habeas corpus is denied.

JONES, P. J., and BRETT, J., concur.