# Ex parte OWENS.

No. A-11353.   June 21, 1950.

(219 P. 2d 1030.)

J. J. Bruce, Oklahoma City, and E. M. Guillory and Cousin P. Kimble, both of Muskogee, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

POWELL, J.   Petitioner, Chester Owens, an inmate of the State Penitentiary at McAlester, serving a term of 35 years imprisonment by reason of his plea of guilty to a charge of attempted rape in the first degree, taking place in Muskogee county, Okla., on February 23, 1939, has filed his petition in this court for writ of habeas corpus, seeking his release.

Petitioner contends in effect that the judgment under which he was incarcerated is void for the reason that at the time of entering his plea of guilty he was not appointed counsel, and was not informed of his rights under the Constitution.

Petitioner sets out in his verified petition that he was arrested by the sheriff of Muskogee county for attempted rape on Ola Scott, a white girl, near Oktaha, about 14 miles south of Muskogee.   That complaint was not filed until February 27, 1939; that he was arraigned before S. C. Cavender, judge of the city court, on the same morning and entered a plea of not guilty to the charge, was returned to the county jail to await preliminary hearing, which was set for March 8, 1939, and his bond fixed at $3,000. It is claimed that the examining magistrate did not inform him of his right to be represented by counsel. It is alleged that the then county attorney of Muskogee county, Douglas Garrett, obtained an order from O. H. P. Brewer, district judge of Muskogee county, to transport petitioner to the State Penitentiary at McAlester for safe-

keeping, fearing that the sheriff's force of Muskogee county could not properly and safely guard the life of petitioner.

It is alleged that the order to transport petitioner to McAlester was not obtained in good faith, but in furtherance of the efforts of the sheriff and county attorney to force petitioner to change his plea of "not guilty" to "guilty." He states that he was not confined any further in the penitentiary than the warden's office, and that after dark he was taken from that office and placed in Sheriff John H. Baxter's automobile and was told that it would now be safe for him to be returned to Muskogee, and on the way back the sheriff and deputy began trying to persuade him to change his plea, and that under such circumstances petitioner did change his plea while so being returned to Muskogee and that the sheriff drove directly to the Muskogee county courthouse, placed petitioner in his office and 'phoned District Judge O. H. P. Brewer, the court clerk and the county attorney, who were at their respective homes, and that after they arrived and conferred that he was taken before Judge Brewer, who summarily sentenced him to 35 years in the State Penitentiary at McAlester. That this was on the night of February 27, 1939, and that on the morning of February 28, 1939, he was returned to the penitentiary.

Attached to the petition for writ is a certified copy of the complaint signed by Ola Scott, the alleged victim, and of transcript from the examining magistrate filed in the district court of Muskogee county; also of "Order to transfer prisoner to McAlester Penitentiary for safekeeping", entered by O. H .P. Brewer, district judge; also certified copy of information and of "Commitment on Plea of Guilty", with sheriff's return.

Petitioner has attached to his brief an affidavit from Hattie Owens, mother of Chester Owens, in which she sets out that she first saw her son after his arrest, on the morning of February 28, 1939, after his sentence; that she went to several lawyers but was advised to wait until prisoner had served about 15 years of his sentence before applying for his release under parole; that another attorney offered to help but that she was not able to raise the money. Also attached to the brief is a photostatic copy of an article that is alleged to have appeared in the Muskogee Daily Phoenix of February 28, 1939, covering the case of Chester Owens. The article purports to be certified to by Jack Hawn, telegraph editor of the newspaper mentioned. The pertinent portions of the article, read:

"Chester Owens, 23, Oktaha Negro, was sentenced to 35 years in the State Penitentiary after a swift development of events last night led him before District Judge O. H. P. Brewer to plead guilty to charges of attempting to attack a white woman near Oktaha late Thursday evening.

"The Negro had pleaded not guilty at his arraignment in city court yesterday afternoon and was being rushed to McAlester for safekeeping when he decided to plead guilty.

"In his confession, Owens said he walked in front of a white woman along a lonely dirt road west of Oktaha at dusk last Thursday. The woman, Ola Scott, about 30, had arrived in Oktaha by bus from Eufala and had decided to walk the remaining few miles over the dirt road to visit some relatives.

"The Negro stopped by a bridge, and when the woman passed he grabbed her and threw her into a culvert below. She was strong and resisted his attempts to tear off her clothes until another Negro, John (Snowball) Williams, of Oktaha, rode up on horseback.

"Williams frightened off Owens, who jumped the stream and darted across a field, and Williams took Mrs. Scott to a nearby farm house where she telephoned the sheriff's office in Muskogee.

"Mrs. Scott and Williams identified Owens, who was arrested several hours after the attempted attack, by Fred Ryser and Connie Vann, deputy sheriffs. Owens was re- moved to the Muskogee County Jail, where he had been held in secrecy pending his arraignment yesterday after- noon in city court.

"County Attorney Douglas Garrett, who filed the charge of attempted assault in the second degree, said feel- ing was running high among both the Negroes and white people of the Oktaha vicinity, and urged that sheriff Bax- ter take the Negro to McAlester, immediately after arraign- ment for safe-keeping.

"Sheriff Baxter and Fred Ryser took Owens to Mc- Alester late yesterday afternoon, and when they reached the prison Owens decided to change his plea, Baxter tele- phoned Garrett, and Judge Brewer and Joe Childers, Court Clerk, were ready to receive the plea when he was brought back about 8 o'clock last night.

"After sentencing him to 35 years in the penitentiary at McAlester, Judge Brewer declared:

" 'This is a serious offense you have committed, you took it upon yourself to plead the way you did, because I gave you every opportunity to exercise your constitu- tional rights of a trial.

" 'Perhaps in the future some governor will have a change of heart and if you are a good prisoner you may be released. But that'll be long after I am dead.' "

Following the filing of the petition in this court on January 5, 1950, an order was on that day entered re- quiring the warden of the State Penitentiary at McAlester to respond to said petition of Chester Owens and to show cause for his detention in the penitentiary, and the mat-

ter was set for oral argument, and petitioner was represented by counsel and the respondent by the Attorney General, and all matters considered at length. The Attorney General, on May 4, 1950, filed a supplemental response in which he states:

"Because of the 11 years' delay on the part of petitioner it has been almost impossible to secure evidence as to the circumstances surrounding the petitioner's plea of guilty. Judge Cavender before whom the preliminary hearing was held is dead. Judge O. H. P. Brewer has been ill for many months and has no recollection with reference to the matter. The former county attorney and others connected with the case are not certain as to the details. Mr. Baxter, at that time sheriff and alleged to have influenced the petitioner to plead guilty, denies having had anything to do with the matter. Investigation has revealed the fact that Fred Ryser, at that time a deputy sheriff, had charge of petitioner, and hereto attached is an affidavit made by him setting forth the facts as he recalls them."

The affidavit by Fred Ryser sets out that he was a deputy sheriff of Muskogee county and the person who on February 27, 1939, had custody of Chester Owens to be transported to the State Penitentiary at McAlester for safekeeping under the order of the district court of Muskogee county, and that he returned the same "not executed," for the reason that the prisoner on his own volition decided to plead guilty and throw himself on the mercy of the court, and that affiant at no time used any threatening language toward said defendant or used any language calculated to frighten him or coerce him in any way; that he had practically no conversation with the prisoner and that while prisoner was at the sheriff's office he heard no other officer or person use any threatening language or language calculated to or likely to frighten the prisoner; that

to the best of his knowledge prisoner voluntarily decided to change his plea.

It is apparent in an action of this nature, affidavits from the county attorney and court clerk of Muskogee county, who were serving at the time the prisoner was sentenced, with copy of the court reporter's notes, if any, and copy of the minutes of the court clerk, if any, would have been of great aid to this court, but though extra time was granted, the Attorney General has been unable to furnish us but the affidavit of the former deputy sheriff, as heretofore mentioned. As indicated, the examining magistrate is deceased and the trial judge has long been ill and has no recollection of the case. Thus, by reason of the lapse of time the records and evidence of what actually happened at the time the petitioner was arraigned before the examining magistrate and at the time of petitioner's plea before the district court, is far from satisfactory, and makes difficult, if not impossible, a determination of what truly happened. But the situation presented is such as might naturally be expected where one permits a period of eleven years to elapse without having some action instituted to have his grievances heard.

This case demonstrates that it is the better practice for courts, in all felony cases where the defendant is not represented by counsel, to proceed with all caution by having the court reporter take down all proceedings, including the court's explanation to prisoner of his constitutional rights, and for the court to appoint some attorney to represent the prisoner if questioning indicates the prisoner is unable to employ counsel. Such procedure would certainly aid this court in disposing of such cases as this, and free from the possibility of erroneous conclusions concerning factual matters.

In the solution of this case there are a number of principles of law that should be kept in mind; particularly that this court will only grant relief by habeas corpus when the judgment is void or the court did not have jurisdiction to render judgment and sentence. As contended by petitioner, if the court was not completed by the appointment of counsel for an indigent, illiterate person, it had no jurisdiction to render judgment. In re Stevens, 81 Okla. Cr. 65, 160 P. 2d 415; Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139. This is the question for determination.

It is well settled that an accused may waive his constitutional rights to be represented by counsel and to trial by jury. O.S. 1941, Const., Art. 2, § 20. It is the further rule that whether an accused has waived his right to the assistance of counsel depends in each case upon the particular facts and circumstances, including the background, experience, and conduct of the accused, and that where habeas corpus petition charging deprivation of constitutional rights is not presented until many years after conviction and sentence, the proof to entitle petitioner to relief must be clear and convincing, and every presumption favors regularity of proceedings had in the trial court, and petitioner for the writ has the burden of sustaining the allegations of his petition. Ex parte Snow, 84 Okla. Cr. 423, 183 P. 2d 588; Ex parte Matthews, 85 Okla. Cr. 173, 186 P. 2d 840; Ex parte Owens, 88 Okla. Cr. 346, 203 P. 2d 447; Ex parte Motley, 86 Okla. Cr. 401, 193 P. 2d 613; Ex parte Hall, 91 Okla. Cr. 11, 215 P. 2d 587; Ex parte Workman, 89 Okla. Cr. 289, 207 P. 2d 361.

In the last cited case, this court said:

"The right to relief by habeas corpus may be lost by laches, when the petition for habeas corpus is delayed for a period of time so long that the minds of the trial judge

and court attendants become clouded by time and uncertain as to what happened, or due to dislocation of witnesses, the grim hand of death and the loss of records, the rights sought to be asserted have become mere matters of speculation, based upon faulty recollections, or figments of imagination, if not outright falsifications."

In Ex parte Owens, supra, the principles of law applicable in this case are considered at length, and that case may be referred to for fuller discussion.

In view of the above principles, may it be said that the petitioner has met the burden of showing that the trial court at the time of his arraignment failed to advise him of his constitutional right to be represented by counsel and to his right to trial by jury? This court in Ex parte Motley, supra, held that every presumption favors regularity of proceedings had in the trial court in a criminal case and that error of trial court must affirmatively appear from the record and will never be presumed, and that public policy does not permit petitioner on habeas corpus to supply missing links by his testimony standing alone in a record, but relief must be based on something more substantial, and petitioner's testimony should be corroborated by clear and convincing proof.

The newspaper article offered by petitioner indicates that the trial court in lecturing the petitioner recounted that:

"* * * you took it upon yourself to plead the way you did, because I gave you every opportunity to exercise your constitutional right of a trial. * * *"

The transcript of the examining magistrate merely shows that petitioner changed his plea from "not guilty" to "guilty"' and thereafter the county attorney filed an information in the district court. The record proceedings appear regular. The order of the district court directing

that the petitioner be transferred to the State Penitentiary at McAlester shows by the sheriff's return that it was "not executed." It is signed by Fred Ryser, deputy. Mr. Ryser's affidavit attached to respondent's supplemental response sets out as the reason that the order was not executed was that the accused on his own volition decided to plead guilty. The matters set out in the newspaper article that petitioner submits, and therefore that he must be considered as approving, no doubt had much to do with his decision to plead guilty to the charge. We cannot assume misconduct on the part of the officers and that the safekeeping order signed by the district judge was obtained in bad faith to frighten the petitioner into confessing, especially as this idea is refuted by petitioner's own exhibit.

The record before us further shows that the petitioner at the time of his arrest was 23 years of age, the prime of youth, and though he had spent most of his life on a backwoods farm, he had an eighth-grade education, which is above that of many, and certainly equipped him to read and understand the basic facts of life. His own exhibit indicates that he may have been in fear of the wrath of his neighbors, colored as well as white, and decided to risk the mercy of the trial judge rather than that of a jury, by reason of a colored man, John Williams, having prevented him from accomplishing his alleged purpose and having thereafter been identified by such person.

From a careful study of the affidavits and exhibits, we do not feel that petitioner has met the burden of showing the facts sufficient to disclose that the court before whom he was tried was not properly completed by the petitioner not being advised of his constitutional right to counsel, and that the court would appoint counsel free of cost to him if he was unable to employ counsel. The

affidavit by petitioner's mother discloses that she consulted a number of attorneys immediately after petitioner entered his plea of guilty to the charge made, and we cannot speculate as to why no further effort was made to bring the matter now urged to the attention of this court until the elapse of some eleven years, and after the examining magistrate is deceased, the trial judge ill and unable to remember the case, and the minutes of the happening not available, or not submitted, and other officials of the time who were cognizant of the case and charged with official duties in connection therewith, not now in office, and not available or forgetful of the facts.

One can imagine how truth might be stifled and justice defeated if prisoners, if not released outright, could obtain new trials years after the happening of the crime charged and after officials and witnesses at the date of the initial arrest had died or memories become blurred and inaccurate. If, under the circumstances, the petitioner considers the punishment assessed severe and feels that he is entitled to have his case further considered, his recourse is to the Pardon and Parole Board, and not to this court.

From the record here presented, we are unable to say that petitioner was deprived of any of his constitutional or statutory rights and the petition for writ of habeas corpus is denied.

JONES, P. J., and BRETT, J., concur.