## MARTIN F. DICKINSON *v.* GARRELL MULLANEY, CHIEF EXECUTIVE OFFICER, CONNECTICUT VALLEY HOSPITAL, ET AL.
### (AC 25704)

Bishop, McLachlan and Foti, Js.

Argued September 13—officially released December 27, 2005

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellant (petitioner).

*Jo Anne Sulik*, senior assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellees (respondents).

*Opinion*

BISHOP, J. The petitioner, Martin F. Dickinson, appeals from the habeas court's judgment denying his amended petition for habeas corpus and holding that his claims were barred by laches. On appeal, the petitioner claims (1) that the court improperly concluded that the equitable defense of laches is available in a habeas corpus action and (2) that, even if laches can be interposed as a defense to a habeas claim, the court improperly applied laches in this instance. Because the petitioner failed to attack before the habeas court the legal viability of laches as a defense in a habeas proceeding, we decline to review the petitioner's first claim. We conclude, however, that the evidence adduced at the habeas hearing was insufficient for the court to

have concluded that the petition was barred by laches. Accordingly, we reverse the judgment of the habeas court and remand this matter for further proceedings.

The following factual and procedural background is relevant to our consideration of the petitioner's claims. On September 15, 1984, the petitioner was arrested and charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and cruelty to persons in violation of General Statutes § 53-20. On March 5, 1985, the petitioner waived his right to a jury trial, and pleaded not guilty by reason of mental disease or defect to a substitute information charging him with sexual assault in the first degree in violation of § 53a-70 (a) and kidnapping in the second degree in violation of General Statutes § 53a-94. On that date, the petitioner was tried to the court. After hearing the evidence, the court found the petitioner not guilty by reason of mental disease or defect. On June 4, 1985, the court committed the petitioner to the custody of the commissioner of mental health and addiction services for a period not to exceed twenty years.[1]

On September 19, 2001, the petitioner filed a petition for a writ of habeas corpus. In his two count amended petition, the petitioner claimed that he did not receive the effective assistance of counsel in the criminal proceedings and that his plea was not knowing, intelligent and voluntary. The respondents[2] filed a return in which

[1] The petitioner's twenty year commitment ended on June 3, 2005. Prior to that, in February, 2005, the state moved to recommit him. At oral argument, counsel informed this court that the state's motion has not yet been adjudicated and that the petitioner moved, in May, 2005, to extend his commitment in the hope that a determination of this appeal would obviate the need to respond to the state's motion to extend the commitment.

[2] The respondents are Garrell Mullaney, chief executive officer of Connecticut Valley Hospital, where the petitioner has been in custody, and Thomas A. Kirk, Jr., commissioner of the department of mental health and addiction services.

they claimed, inter alia, that the petitioner's claims were barred by laches and that he has been procedurally defaulted in his claim regarding his plea because he did not timely seek to withdraw his plea in the underlying criminal proceeding. The petitioner, in his reply to the respondents' return, denied the claim of laches and asserted, generally, that he did not seek to withdraw his plea or to appeal directly from the court's finding of not guilty by reason of mental disease or defect because his attorney had represented him inadequately.

The matter was tried to the court on April 21, 22 and 29, 2004. The petitioner and his parents testified, as did two legal experts and an attorney from the petitioner's trial counsel's firm. Counsel stipulated that the petitioner's trial counsel, the trial judge and the trial prosecutor had died since the date of the petitioner's commitment. By memorandum of decision filed July 15, 2004, the court denied the habeas petition on the ground that the petitioner's claims were barred by laches. This appeal followed.[3]

---

[3] When the petitioner petitioned for certification to appeal pursuant to General Statutes § 52-470 (b), the court dismissed the petition, noting that this is "a civil case and does not require the granting of a petition for certification to appeal . . . ." While stopping short of conceding that the certification requirement does not apply here, the respondents note that because § 52-470 (b) sets forth a certification procedure for those convicted of a crime, its provisions do not appear to apply to the petitioner because he was acquitted by reason of mental disease or defect. Although the procedures for the treatment and custody of those acquitted of criminal charges on the basis of mental disease or defect are set forth, generally, in General Statutes § 17a-560 et seq., and although General Statutes § 17a-575 provides for the applicability of habeas relief to such acquittees, neither that chapter of the General Statutes nor chapter 319i or § 52-470 explicitly answers the question of whether an acquittee who is unsuccessful in a habeas matter must thereafter seek certification to appeal from a habeas court's adverse ruling.

Because § 52-470 represents a limitation of an unsuccessful litigant's right to appeal, we are not inclined to extend its limitation to cases, such as this one, in which the petitioner is an acquittee. In this instance, in which neither party briefed the question and where the court treated the matter as a civil action, we take jurisdiction on the ground that the court, by its notation, tacitly granted certification to appeal. Thus, we have jurisdiction over this

On appeal, the petitioner first challenges the applicability of the defense of laches in habeas proceedings, an issue that has not been addressed in Connecticut appellate jurisprudence. In support of his claim, the petitioner argues that laches is an equitable defense that is not available in habeas proceedings, which are legal actions. The petitioner further argues that applying laches to habeas proceedings would violate the open courts provision of the Connecticut constitution, would be tantamount to a suspension of the right of habeas corpus, and would be inconsistent with the history and purpose of the writ of habeas corpus. Whatever merit such arguments may have in a properly framed habeas petition, the record in this case does not provide us an adequate basis to reach them.

The petitioner's claim that laches is not a legally viable defense in habeas matters cannot be gleaned from the record. In reply to the respondents' return asserting the defense of laches, the petitioner merely denied the allegation without claiming that laches is not available as a defense to a habeas action. Additionally, in his posttrial brief, the petitioner merely argued that the respondents failed to meet their burden of establishing laches. Thus, the petitioner did not raise his claim before the habeas court that laches is not an appropriate defense in a habeas matter.[4] Litigants may not try a case on one theory and appeal on another.

---

matter either because no certification to appeal is necessary or, in the alternative, because the habeas court, by implication, granted certification.

[4] During oral argument before this court, counsel for the petitioner claimed that the issue had been raised in the habeas court through the vehicle of her posttrial brief. We are unpersuaded. In the petitioner's brief, the following comment was made regarding the availability of laches as a defense to a habeas action: "Whether the equitable doctrine of laches would even apply to this habeas petition challenging the [p]etitioner's conviction . . . [is] not terribly well established." We do not take that oblique reference to the possibility that laches may not be appropriate as an adequate substitute for a well briefed argument against the applicability of laches in habeas proceedings.

*Mellon* v. *Century Cable Management Corp.*, 247 Conn. 790, 799, 725 A.2d 943 (1999). "When a party raises a claim for the first time on appeal, our review of the claim is limited to review under either the plain error doctrine as provided by Practice Book § 60-5, or the doctrine set forth in *State* v. *Golding*, [213 Conn. 233, 239–40, 567 A.2d 823 (1989)]." (Internal quotation marks omitted.) *Irizarry* v. *Irizarry*, 90 Conn. App. 340, 343, 876 A.2d 593 (2005). In his appellate brief, however, the petitioner has not sought review under either of those doctrines. As this court has previously noted, "it is not appropriate to engage in a level of review that is not requested." (Internal quotation marks omitted.) Id. Because the petitioner did not raise this question before the habeas court, we decline to review his claim.[5]

The petitioner next claims that the court improperly concluded that his claims were barred by laches without making the requisite factual findings of inexcusable delay and prejudice. "The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant. . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a plaintiff has been guilty of laches is one

---

[5] We note that "habeas corpus has traditionally been regarded as governed by equitable principles. . . . Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." (Internal quotation marks omitted.) *Negron* v. *Warden*, 180 Conn. 153, 166 n.6, 429 A.2d 841 (1980). Indeed, the ability to bring a habeas corpus petition at any time is limited by the equitable doctrine of abuse of the writ based on unnecessary successive petitions. See *Summerville* v. *Warden*, 229 Conn. 397, 641 A.2d 1356 (1994). Habeas relief is also limited by the equitable doctrine of cause and prejudice. See *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 589 A.2d 1214 (1991). Thus, although our appellate jurisprudence has not dealt with the specific issue of whether laches applies in the habeas context, our Supreme Court has demonstrated a willingness to impose reasonable limitations on the use of the writ on the basis of notions of equity.

of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005).

In applying laches to the petitioner's claims, the court found that the state was prejudiced by the delay because trial counsel was deceased and, therefore, unavailable to refute the petitioner's allegations of failure to advise.[6] In finding prejudice, the court also noted that the prosecuting attorney and the trial judge were deceased. The court, however, made no finding that the delay, however long, was inexcusable. Indeed, the record does not support such a finding. In raising the defense of laches, the respondents undertake the burden of proving their affirmative defense by adducing evidence on both prongs of the laches defense. Thus, the respondents must demonstrate not only prejudice occasioned by the delay, but also that the delay was inexcusable. Although the respondents at trial arguably demonstrated prejudice as a result of the deaths of both counsel and the trial judge, as well as the absence of much of the trial record, the respondents provided no evidence that the delay in bringing these proceedings was inexcusable other than by noting the passage of time between acquittal and the filing of the petition. Proof of the mere passage of time, however long, is insufficient to establish laches. See *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 613, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003). In the absence of evidence of inexcusable delay, a finding of laches cannot stand.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

---

[6] The court also heard evidence that much of the trial record is unavailable.