2007-NMSC-045

164 P.3d 72

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Kevin SUTPHIN, Defendant–Appellee.**

No. 29,387.

Supreme Court of New Mexico.

June 29, 2007.

Rehearing Denied July 27, 2007.

Gary K. King, Attorney General, Martha Anne Kelly, Assistant Attorney General, Santa Fe, NM for Appellant.

Inocente, P.C., Brian A. Pori, Albuquerque, NM for Appellee.

## OPINION

CHÁVEZ, Chief Justice.

{1} We are again presented with the opportunity to clarify that a petitioner may raise issues in a petition for a writ of habeas corpus that could have been raised on appeal, but that such issues are reviewed for fundamental error. In this case, notwithstanding two errors in the jury instructions, we conclude that fundamental error did not occur at Petitioner Kevin Sutphin's trial. We thus reverse the district court and deny Petitioner a writ of habeas corpus.

## I. BACKGROUND

{2} Our recitation of the facts is taken from our opinion upholding on direct appeal Petitioner's conviction for first degree murder and tampering with evidence. *State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988). On October 18, 1985, Charles Franklin was found unconscious and covered with a bloody blanket in his cell located in the protective custody unit of the Penitentiary of New Mexico in Santa Fe. *Id.* at 127, 753 P.2d at 1315. At that time, Petitioner and his co-defendant were housed in the protective custody unit as well. *Id.*

A . . . corrections officer noticed blood on [Petitioner's] forearms and a pinkish-colored towel in his cell, and other items which he knew belonged to Franklin. [Petitioner's] bloody clothes were later found in a trash can. Franklin's autopsy revealed five large lacerations on the right side of his head which resulted in his death; but any one of the blows to his head would have rendered him unconscious.

. . . .

Defendant testified that on the night of October 18, he was in Franklin's cell when he noticed that Franklin was holding a small pipe in one hand. Fearful that

Franklin would attack him, [Petitioner] jumped on him as Franklin started to fall, and straddled him on Franklin's bunk; [Petitioner] proceeded to grab the hand that held the pipe and hit Franklin on his head with it. [Petitioner] further testified that Franklin then pulled from under the pillow a larger pipe, but before Franklin had time to struggle, [Petitioner] grabbed a pipe and repeatedly hit Franklin with it in the head. Codefendant Hoffman observed the incident, pulled [Petitioner] off Franklin and urged [Petitioner] to leave Franklin's cell. At trial, [Petitioner] claimed that he hit Franklin in self-defense.

*Id.* No defensive wounds were found on Franklin. *Id.* at 131, 753 P.2d at 1319. Additionally, Petitioner testified that after Franklin became unconscious, he covered Franklin's body with a blanket and continued to hit him with the pipe. *Id.*

{3} The jury was instructed on first-degree murder and self-defense. The first-degree murder instruction read:

For you to find the defendant guilty of first-degree murder by a deliberate killing as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed Charles Franklin;

2. The killing was with the deliberate intention to take away the life of Charles Franklin;

3. This happened in New Mexico on or about the 18th day of October, 1985.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

The self-defense instruction read:

Evidence has been presented that the defendant killed Charles Franklin while defending himself.

The killing is in self-defense if:

1. There was an appearance of immediate danger of death or great bodily harm to the defendant as a result of Charles Franklin's assaulting him with an iron pipe; and

2. The defendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed Charles Franklin because of that fear; and

3. A reasonable person in the same circumstances as the defendant would have acted as the defendant did.

In considering this defense, and after considering all the evidence in the case, if you have a reasonable doubt as to the defendant's guilt, you must find him not guilty.

Petitioner did not raise an issue with the jury instructions on direct appeal.

{4} Six years after we upheld Petitioner's conviction, we published *State v. Parish*, 118 N.M. 39, 878 P.2d 988 (1994). In *Parish*, the defendant challenged his conviction of voluntary manslaughter on the grounds that: (1) the voluntary manslaughter instruction omitted unlawfulness as an element, and (2) the self-defense instruction failed to explicitly place the burden on the State to disprove self-defense. *See id.* at 41, 878 P.2d at 990. Regarding the first issue, we stated that when a self-defense claim is properly before the jury in a manslaughter case, the unlawful nature of the killing is an element that must be proven by the State. *See id.* at 42–43, 878 P.2d at 991–92. Because the element of unlawfulness was omitted in the instructions and because self-defense was appropriate in that case, reversible error occurred. *Id.* We also determined that the self-defense instruction was ambiguous since it did not explicitly inform the jury that, under New Mexico law, the State has the burden of disproving self-defense beyond a reasonable doubt. *Id.* at

45–46, 878 P.2d at 994–95. We held that reversible error occurred with this instruction since the ambiguity was not cured by another instruction. *Id.*

{5} Relying on *Parish*, Petitioner filed a pro se petition for a writ of habeas corpus. Petitioner argued that his rights to due process were violated since, by omitting the element of unlawfulness, the State was not required to prove every element beyond a reasonable doubt, and because the self-defense instruction used at his trial could have been construed as placing the burden on Petitioner to prove self-defense. After being assigned counsel, Petitioner raised the same issue in an amended petition, arguing that such errors were fundamental.

{6} The State's response to the petition implied that fundamental error had not occurred at Petitioner's trial since there was no plausible evidence of self-defense and because the deliberate-intent instruction "would have alerted the jury that it was the State's burden to prove beyond a reasonable doubt that Petitioner intended to kill the victim for his own purposes and not just in defense of himself." Finally, the State argued that the equitable doctrine of laches precluded Petitioner from prevailing.

{7} A hearing was not held in Petitioner's case until eight years after Petitioner had originally filed his pro se petition. After hearing purely legal arguments on the *Parish* claim, the district court granted Petitioner a writ of habeas corpus. In its written order, the district court stated: "The errors in the jury instructions on homicide and self-defense violated Mr. Sutphin's state and federal constitutional right to proof beyond a reasonable doubt of every essential element of the crime charged and to present an adequate defense." In conclusion, the order reads:

> The errors in the jury instructions on homicide and self defense were so fundamental that post-conviction relief may be afforded. Where, as here, the fundamental error raised by the habeas petitioner is identical to the error the New Mexico Supreme Court discussed in *Parish* in so many respects, the need for finality must yield to the need for consistency.

The State appealed the district court's order to this Court. *See* Rule 5–802(H)(1) NMRA. We reverse the district court.

## II. DISCUSSION

{8} The State's arguments fall into three basic categories. First, the State argues that Petitioner should be barred from raising his *Parish* claim because he failed to raise it on direct appeal. Second, the State asserts that even if Petitioner can raise the claim in a habeas petition, the equitable doctrine of laches should bar relief. Finally, reaching the merits of Petitioner's claim, the State argues that a writ of habeas corpus should not be granted since no fundamental error occurred at Petitioner's trial. We disagree with the State on the first two points, but agree that the errors at Petitioner's trial were not fundamental.

### A. A Habeas Petitioner May Assert Fundamental Error Even If the Claim Could Have Been Raised on Appeal

{9} The State asserts that because all of the facts underlying his *Parish* claim were known or knowable to Petitioner at the time of trial, Petitioner should be precluded from raising the issue in a habeas petition. Just recently, we addressed this preclusion argument in *Campos v. Bravo*, 2007–NMSC–021, 141 N.M. 801, 161 P.3d 846. In that case, we reiterated that fundamental error may be corrected in a habeas proceeding even though the record was adequate to address the petitioner's claim on direct appeal. *Id.* ¶ 7. We take this opportunity to do so again.

{10} Similar to *Campos*, the facts underlying Petitioner's habeas claim were known or knowable to him at the time of his trial, and the record was adequate to address the issue on direct appeal. *See id.* ¶ 8. Petitioner's claimed error lies in the jury instructions—obviously an error that was knowable at trial. Additionally, although Petitioner's trial occurred before *Parish*, that case simply reiterated existing law. *See Parish*, 118 N.M. at 43–45, 878 P.2d at 992–94. Thus, contrary to the State's assertion, Petitioner's habeas claim is entitled to review, but, because Peti-

tioner should have raised this claim on direct appeal, review is only for fundamental error.

{11} The State insists that making new rules of criminal procedure retroactive defeats the ends of justice, and, thus, principles of finality should trump Petitioner's habeas claim. Yet *Parish* did not announce a new rule of criminal procedure, so any discussion of retroactive application of that case is irrelevant. Petitioner is claiming that his conviction was fundamentally unjust because he was denied due process at his trial when he was convicted without the jury having found all elements beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (explicitly holding "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) ("[T]he failure to instruct the jury on the essential elements of an offense constitutes fundamental error."). Petitioner's claim is cognizable in a petition for a writ of habeas corpus, even when it could have been raised on direct appeal.

### B. The Doctrine of Laches Does Not Apply in Habeas Corpus

{12} The State asks us to apply the equitable doctrine of laches to this case. "The doctrine of laches prevents litigation of a stale claim where the claim should have been brought at an earlier time and the delay has worked to the prejudice of the party resisting the claim." *Garcia v. Garcia*, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991). In support of its argument, the State directs us primarily to cases involving the failure of a habeas petitioner to meet a statute of limitations, *see Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); *Commonwealth v. Abu–Jamal*, 574 Pa. 724, 833 A.2d 719 (2003), or cases involving successive habeas petitions, *see Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992); *Austin v. State*, 914 So.2d 1281 (Miss.Ct.App.2005). Since New Mexico does not impose a statute of limitations on habeas petitioners and since

this is not a successive habeas petition, these cases are inapposite.

{13} The State also directs us to *Dickinson v. Mullaney*, 92 Conn.App. 689, 887 A.2d 390 (2005), *cert. granted*, 277 Conn. 913, 895 A.2d 788 (2006), for the proposition that "laches is an equitable defense that can bar a habeas petitioner from relief." In *Dickinson*, the court noted that the application of the doctrine of laches in habeas proceedings was "an issue that has not been addressed in Connecticut appellate jurisprudence." *Id.* at 392. However, because the petitioner had failed to argue to the lower court that laches was not applicable in habeas cases, the court in *Dickinson* expressly declined to decide the question. *Id.* at 393. While we recognize that *Dickinson* suggested that laches could be imposed against habeas petitioners, the issue was simply not decided in that case. *See id.* at 393 n. 5.

{14} The only case the State cites which actually stands for the proposition that laches is recognized in habeas proceedings is *State ex rel. Smalley v. Morgan*, 211 Wis.2d 795, 565 N.W.2d 805, 808 (Ct.App.1997) ("As an equitable doctrine, habeas corpus is subject to the doctrine of laches."), *abrogated on other grounds by State ex rel. Coleman v. McCaughtry*, 290 Wis.2d 352, 714 N.W.2d 900 (2006). While *Morgan* is on point, it appears there is a split in those jurisdictions that have decided this issue. *Compare Roach v. State*, 27 Kan.App.2d 561, 7 P.3d 319, 323 (2000), *and Ex parte Owens*, 88 Okla.Crim. 346, 203 P.2d 447, 449 (App.1949), *with Jackson v. Jones*, 254 Ga. 127, 327 S.E.2d 206, 208 (1985), *and State v. Cynkowski*, 19 N.J.Super. 243, 88 A.2d 220, 223–24 (App.Div.1952).

{15} We expressly join those jurisdictions that have declined to apply laches to habeas proceedings. We too believe that it would be fundamentally unjust to deny a valid habeas petition merely because of the passage of time. As the Supreme Court of Utah emphasized,

> when a court grants relief pursuant to a habeas corpus petition, it does so on the ground that the petitioner has been wrongfully incarcerated. That is to say, a court

should grant relief if the petitioner establishes that he or she has been deprived of due process of law or that it would be unconscionable not to re-examine the conviction. Therefore, if the proper showing is made, the mere passage of time can *never* justify continued imprisonment of one who has been deprived of fundamental rights, regardless of how difficult it may be for the State to reprosecute that individual. *Julian v. State*, 966 P.2d 249, 254 (Utah 1998) (citations and quoted authority omitted); *see also Cynkowski*, 88 A.2d at 223 ("The longer the unlawful imprisonment, the greater the wrong that the prisoner has suffered, and the stronger, not the weaker, are the reasons for judicial interference.").

### C. Fundamental Error Did Not Occur at Petitioner's Trial

{16} We now reach the merits of Petitioner's habeas petition. This case lies at the intersection of our jurisprudence involving erroneous jury instructions and fundamental error. "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992). The general rule is that fundamental error occurs when the trial court fails to instruct the jury on an essential element. *Osborne*, 111 N.M. at 662, 808 P.2d at 632; *see In re Winship*, 397 U.S. at 364, 90 S.Ct. 1068. However, fundamental error does not occur if the jury was not instructed on an element not at issue in the case. *See Orosco*, 113 N.M. at 783–84, 833 P.2d at 1149–50. Likewise, when there can be no dispute that the omitted element was established, fundamental error has not occurred and reversal of the conviction is not required. *Id.* at 784, 833 P.2d at 1150.

{17} Based on *Parish*, we held in *State v. Cunningham*, 2000–NMSC–009, ¶¶ 8–14, 128 N.M. 711, 998 P.2d 176, that fundamental error did not occur when, in a deliberate-intent murder case, the defendant raised a valid self-defense claim and where: (1) unlawfulness was omitted as an element in the first-degree murder instruction, but (2) un-

like *Parish*, the self-defense instruction correctly stated that the State had the burden of disproving self-defense beyond a reasonable doubt. In *Cunningham*, "self-defense was at the 'foundation of the case' but, because the jury was properly instructed on and decided the issue of self-defense, we [did] not believe that the omission from the elements section '[took] from the defendant a right which was essential to his defense.'" *Id.* ¶ 14 (quoting *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942)) (second alteration in original).

{18} Soon thereafter in *State v. Benally*, 2001–NMSC–033, ¶¶ 10–11, 131 N.M. 258, 34 P.3d 1134, the defendant claimed self-defense, the second-degree murder instruction did not include unlawfulness as an element, and one of the two self-defense instructions failed to instruct that the State had the burden of disproving self-defense beyond a reasonable doubt. A majority of this Court held in *Benally* that fundamental error occurred because the flawed self-defense instruction was presented closer in time to the second-degree murder instruction than the correct self-defense instruction. *See id.* ¶¶ 18–20. Yet, *Benally* was criticized for applying a "technical and formalistic approach" to analyzing the jury instructions. *Id.* ¶ 28, (Baca, J., dissenting). The dissent argued that "by limiting its analysis to an isolated review of the jury instructions, the majority in effect reviewe[d] th[e] case for reversible error rather than for fundamental error." *Id.; cf. State v. Kirby*, 1996–NMSC–069, ¶ 6, 122 N.M. 609, 930 P.2d 144 (holding, without considering the facts and circumstances of the case, that fundamental error occurred when an element was omitted from the instructions). The dissent believed that "[t]o properly resolve this issue, the Court is obliged to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the Defendant's conviction was the result of a plain miscarriage of justice." *Id.* ¶ 24. Ultimately, the dissent concluded that fundamental error did not occur because the "facts in evidence did not warrant submitting the issue of self-

defense." *Id.* ¶ 46 (quoted authority omitted).

{19} Later, in *State v. Barber*, 2004–NMSC–019, ¶ 1, 135 N.M. 621, 92 P.3d 633, the issue was "whether the absence of a jury instruction defining possession constitute[d] fundamental error." In answering this question, we adopted the formulation in *Benally's* dissent of what constitutes fundamental error in regard to jury instructions:

> Our analysis of whether the failure to define possession rose to the level of fundamental error in Defendant's case begins at the same place as our analysis for reversible error. We must determine whether a reasonable juror would have been confused or misdirected by the jury instruction. Fundamental-error analysis then requires a *higher* level of scrutiny. If we find error, our *obligation* is "to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the Defendant's conviction was the result of a plain miscarriage of justice."

*Id.* ¶ 19 (quoting *Benally*, 2001–NMSC–033, ¶ 24, 131 N.M. 258, 34 P.3d 1134 (Baca, J., dissenting)) (citations omitted) (emphasis added).

{20} In *Barber* we looked at the facts adduced at trial and concluded that there was "no distinct possibility ... that the jury convicted Defendant without finding all the elements beyond a reasonable doubt." *Id.* ¶ 26. We clarified that "[e]rror is not fundamental when the jury could not have reached its verdict without also finding the element omitted from the instructions." *Id.* ¶ 29. Finally, in *State v. Reed*, 2005–NMSC–031, ¶ 57, 138 N.M. 365, 120 P.3d 447, we recently held that fundamental error did not occur when, assuming a correct instruction was given, no rational juror could have found other than they did with the incorrect instruction.

{21} In this case, after looking at the individual facts and circumstances, we cannot conclude that Petitioner's trial was infected with fundamental error. Simply put, self-defense was not "at issue" in this case. While we applaud the trial court giving Petitioner the benefit of doubt at his trial, had the court declined to give a self-defense instruction, we would not have found error. Self-defense not being appropriately before the jury in the first place, unlawfulness was not an essential element needing to be proven by the State. *See Parish*, 118 N.M. at 43, 878 P.2d at 992 ("It is the element of unlawfulness that is negated by self-defense.").

{22} "Homicide is justifiable if the killer acted reasonably in self-defense." *State v. Gallegos*, 2001–NMCA–021, ¶ 14, 130 N.M. 221, 22 P.3d 689. Whenever there is evidence, however slight, that the defendant acted in self-defense, the instruction should be given. *State v. Lopez*, 2000–NMSC–003, ¶ 23, 128 N.M. 410, 993 P.2d 727. Nevertheless, a defendant is not entitled to the instruction when the evidence is "so slight as to be incapable of raising a reasonable doubt in the jury's mind on whether a defendant ... did act in self-defense." *State v. Heisler*, 58 N.M. 446, 456, 272 P.2d 660, 666 (1954). Moreover, even when the defendant is faced with an imminent threat, the defendant's reaction must be considered. *State v. McLam*, 82 N.M. 242, 244, 478 P.2d 570, 572 (Ct.App. 1970). That is, if the defendant's reaction is unreasonable, a self-defense instruction is not appropriate, although one on voluntary manslaughter may be. *See id.*

{23} Petitioner and his co-defendant testified that Franklin threatened Petitioner with a pipe and then lost balance. Petitioner then: (1) pinned Franklin to the bed, (2) repeatedly struck Franklin in the head with a pipe when any one blow would have rendered him unconscious, (3) placed a blanket over Franklin's body after he became unconscious and continued to hit him with a pipe, and (4) had to get pulled off of Franklin's lifeless body by his co-defendant. There was insufficient evidence to warrant a self-defense instruction. *See Lopez*, 2000–NMSC–003, ¶ 26, 128 N.M. 410, 993 P.2d 727 (holding that the trial court did not err in refusing a self-defense instruction where the defendant's "repetitive, violent actions suggest[ed] conduct fueled by hatred or by rage or other strong emotion, but not by fear"); *State v. Martinez*, 95 N.M. 421, 423, 622 P.2d 1041,

1043 (1981) (finding insufficient evidence of self-defense where the defendant shot the victim, wrapped a cord around the victim's neck, and beat the victim with such force to crush his skull).

{24} To say that Petitioner was entitled to a self-defense instruction would be to say that it is lawful to beat an initial attacker to death after rendering him or her unconscious. This we are unwilling to do. *Cf. Heisler*, 58 N.M. at 457, 272 P.2d at 667 (declining to hold that a self-defense instruction was appropriate when doing so "would license any participant in a physical combat waged between two men with hands and fists, thinking himself about to be the loser, to slay his opponent with whatever weapon he could lay his hands on"). Defendant's actions were not reasonable and did not support a self-defense instruction.

{25} While, as the dissent points out, we do not have the luxury of reviewing the complete trial transcript, the key fact is undisputed. What matters is that Petitioner continued to beat Franklin in the head with a metal pipe well after Franklin may have posed any danger to Petitioner. In his brief-in-chief on direct appeal, Petitioner acknowledges that he

> testified that when he saw Franklin poised as if to strike, and temporarily off-balance, he took the advantage and immediately straddled Franklin on his bunk, grabbed the hand that held the pipe and slammed that hand into Franklin's head. Franklin twisted around and reached for another larger pipe that was located under his pillow. [Petitioner] testified that he grabbed a pipe and remembered repeatedly hitting Franklin in the head with significant force.

Moreover, in his pro se habeas petition, Petitioner acknowledged that he straddled Franklin and repeatedly hit him with the pipe. Finally, in his amended petition, Petitioner stated he "testified that he immobilized Mr. Franklin, grabbed a pipe, and hit him repeatedly." .

{26} Petitioner did not dispute in his briefing on appeal that any one of the many head wounds he inflicted on Franklin would have rendered Franklin unconscious. The only apparent testimony somewhat helpful to Petitioner was testimony that some people "overkill" an initial assailant because of adrenaline caused by fright. Assuming such testimony to be true, this did not entitle Petitioner to a self-defense instruction. "Overkilling" an assailant after rendering him or her unconscious is not reasonable and does not entitle one to a self-defense instruction. *See State v. Abeyta*, 120 N.M. 233, 241, 901 P.2d 164, 172 (1995) ("One requirement of self-defense is that the force used must be reasonable in relation to the threat. The use of excessive force in self-defense renders the entire action unlawful." (citation omitted)), *abrogated on other grounds by State v. Campos*, 122 N.M. 148, 158 n. 4, 921 P.2d 1266, 1276 n. 4 (1996).

{27} Since Petitioner was not entitled to a self-defense instruction at his trial, fundamental error did not occur when the element of unlawfulness was not included in the deliberate-intent murder instruction and when the jury was not explicitly told that the State had to disprove self-defense beyond a reasonable doubt. Petitioner received substantial justice. As in *Heisler*, "in so far as the jury was instructed at all on that subject, [Petitioner] got more than he was entitled to ... and the error, if any, in the instructions so given may not be made the basis of a reversal." *Id.* at 452, 272 P.2d at 664.

## III. CONCLUSION

{28} For the foregoing reasons, we reverse the district court and deny Petitioner a writ of habeas corpus.

{29} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices, and PATRICIO M. SERNA, Justice (concurring in part and dissenting in part).

SERNA, Justice (concurring in part and dissenting in part).

{30} I respectfully dissent. Although I concur with the majority that "fundamental error may be corrected in a habeas proceeding even though the record was adequate to

address the petitioner's claim on direct appeal," Maj. Op. ¶ 9, and that laches do not apply to habeas proceedings, Maj. Op. ¶ 15, I cannot agree that Petitioner was not entitled to the self-defense instruction when that determination is based primarily on the recitation of facts contained in *State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988). *See* Maj. Op. ¶¶ 21–23. Consequently, I would affirm the district court's grant of Petitioner's writ of habeas corpus.

{31} The majority acknowledges that Petitioner's jury instructions contained the same jury instruction errors that this Court recognized as fundamental error in *State v. Benally,* 2001–NMSC–033, 131 N.M. 258, 34 P.3d 1134. *See* Maj. Op. ¶¶ 5, 18. However, the majority denies Petitioner relief because "after looking at the individual facts and circumstances, [they] cannot conclude that Petitioner's trial was infected with fundamental error." *Id.* ¶ 21. However, for the purposes of this habeas corpus proceeding, this Court did not receive a complete record of the evidence presented at Petitioner's trial. Instead the majority opinion, ¶ 2, relies on the facts as presented in *Sutphin,* a case in which we expressly "view[ed] the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." 107 N.M. at 131, 753 P.2d at 1319.

{32} Indeed, we often defer to the trial court's findings because it hears the evidence presented by both parties in its fact-finding role. *See State v. Attaway,* 117 N.M. 141, 144, 870 P.2d 103, 106 (1994). At trial

> where self-defense is involved in a criminal case and there is any evidence, although slight, to establish the same, it is not only proper for the court, but *its duty* as well, *to instruct the jury fully and clearly on all phases of the law on the issue that are warranted by the evidence.*

*State v. Heisler,* 58 N.M. 446, 455, 272 P.2d 660, 666 (1954) (emphasis added). In the instant case, the trial court determined the self-defense instruction was appropriate, and

without a complete record, I would not question this determination. The cases relied upon by the majority opinion, ¶¶ 19–20, are both distinguishable because those cases were on direct review and not on collateral review, giving the Court the benefit of a complete trial record. *See State v. Barber,* 2004–NMSC–019, ¶ 1, 135 N.M. 621, 92 P.3d 633; *State v. Reed,* 2005–NMSC–031, ¶ 1, 138 N.M. 365, 120 P.3d 447.

{33} The majority also relies on statements contained in Petitioner's brief-in-chief on direct appeal, pro se habeas petition, and amended petition to conclude that he does not deny hitting Mr. Franklin repeatedly. Maj. Op. ¶ 25. However, to scour these documents for only that evidence which supports the majority's conclusion is akin to a review for sufficiency of the evidence, except that, in this case, the majority is substituting the fact-finder's judgment for its own. *See Sutphin,* 107 N.M. at 131, 753 P.2d at 1319. Without a complete record, this Court should rely on the district court's determination that a self-defense instruction was appropriate.

{34} In conclusion, I would not only "applaud" the district court for instructing the jury on self-defense; I would affirm its determination. Having found enough evidence to provide a self-defense instruction, the district court was obligated to properly instruct the jury on all the elements of self-defense and first-degree murder. *See State v. Osborne,* 111 N.M. 654, 662, 808 P.2d 624, 632 (1991). This Court has determined these errors constitute fundamental error, and this entitles Petitioner to habeas relief. Therefore, I respectfully dissent.